JOSEPHUS B. STUART, and ANN his wife, *Appellants*,
*against*

THE PRESIDENT, DIRECTORS AND COMPANY OF THE MECHANICS' AND FARMERS' BANK IN THE CITY OF ALBANY, *Respondents*.

A Court of equity, like a Court of law, must decide according to the allegations and proofs.

The examination of witnesses must be confined to the facts put at issue by the pleadings; and testimony taken as to facts not in issue, will be rejected.

If in a loan of money, the lender imposes on the borrower, as a condition of the loan, property taken in part of the sum lent, at a higher value than it is worth, it is usury; with-in the statute, But, where goods, or the notes of a bank, or of a third person, constitute part of the loan, and the value of such goods be uncertain and fluctuating, and the borrower, voluntarily, and

APPEAL from the Court of Chancery.

On the 19th of *October*, 1819, the respondents filed their bill in the Court of Chancery, against the appellants, in which they stated, that the appellant, *Josephus B. Stuart*, and one *Gilbert Stewart*, being, previous to the 24th of *March*, 1819, indebted to the respondents in large sums of money, on notes then in their banking house, either as drawers or endorsers, a negotiation took place between the said *Gilbert* and *Josephus B. Stuart*, and the respondents, for an additional loan of 6,500 dollars ; and the respondents thereupon agreed to loan to the said *Gilbert Stewart* and *Josephus B. Stuart*, for a reasonable time, the sum of 6,500 dollars, on condition that satisfactory collateral security should be given for the said 6,500 dollars, and such notes as were then in the bank, (stating the same particularly,) amounting to 2,854 dollars and 69 cents, and also collateral security for all such notes as should be given in renewal or continuance of the above notes, and for any debts which might be due to the respondents, from either of the appellants, within six months from the 24th of *March*, 1819. That *J. B. S.*, being, or pretending to be seised of a certain farm of land, situate in the town of *Manlius*, in the county of *Onondaga*, (describing the same particularly by metes

of his own accord, offers to take the goods at a certain price, or notes made by a person in credit, at par, it *seems*, that the loan will not be usurious.

and bounds,) together with *Ann* his wife, thereupon gave
and executed a mortgage to the respondents, to secure the
payment of 10,000 dollars *on demand ;* and that at the time
of the execution and delivery of the mortgage, *G. S.* made
his two promissory notes, the one for 5,000 dollars, and the
other for 1,500 dollars, which were severally endorsed by *J.*
*B. S. ;* and that, at the same time, *G. S.*, and *J. B. S.*, exé-
cuted a bond to the respondents, in the penal sum of 20 000
dollars, conditioned to pay them 10,000 dollars, on demand.
That at the time the respondents received the mortgage
and bond, *Thomas W. Olcott*, their cashier and agent, gave
to *J. B. S.* a receipt in writing, acknowledging the receipt
of the bond and mortgage as collateral security for the
payment of the following debts *due* from *G. S.*, viz. A
note due the 8th of *April*, for 350 dollars; one due the
26th of *April*, for 2,000 dollars; one due the 3d of *May*,
for 106 dollars and 70 cents; one due the 24th of *May*, for
397 dollars and 94 cents; one due the 16th of *June*, for
1,500 dollars; and another due the 22d of *July*, for 5,000
dollars ; and also as collateral security for all and singular
the responsibilities of *G. S.*, or *J. B. S.*, or either of them,
or for any note or notes given in renewal or continuance of
the above-mentioned notes, or for any debts which might be
owing to the respondents, and be chargeable to *G. S.* and
*J. B. S.*, or either of them, within six months from the 24th
of *March*, 1819, which receipt the appellant, *J. B. S.*, re-
ceived as a sufficiently satisfactory and explicit acknowledg-
ment of the purposes and object for which the mortgage and
bond were, in fact, given ; that the whole sum due the re-
spondents, and for which the mortgage was given as collate-
ral security, exceeded the sum of 9,520 dollars ; and that
*G. S.* had become insolvent. The bill then *prayed*, that it
might be referred to one of the Masters of the Court of
Chancery, to take an account of what is due the respondents
on the bond and mortgage, and the appellants be decreed
to pay the same with costs, and that in default thereof, they
be forever barred and foreclosed from any equity of re-
demption, and for such other and further relief as the nature
of the case should require. The bill asked for a discovery

IN ERROR.
. . . . . . . .

ALBANY,
February, 1822.

STUART
v.
MECHANICS'
AND FARMERS'
BANK.

IN ERROR.
..... ...
ALBANY.
February, 1822.

STUART
v.
MECHANICS'
AND FARMERS'
[BANK.

by special interrogatories, which extended to every material subject in controversy between the parties.

The appellants, on the 28th of *February*, 1820. filed their joint and several answers, in which they admitted, that previous to the 24th of *March*, 1819, J. B. S. had endorsed several promissory notes drawn by G. S., and which were discounted at the banking house of the respondents, for the sole benefit of G. S., the exact amount of which they did not recollect, and could not, therefore, state. The appellant, J. B. S., denied that he ever entered into, or had any negotiation, separately, or in conjunction with G. S., with the respondents, for an additional loan of 6,500 dollars, or that he ever made any agreement, either separately, or in conjunction with G. S., with the respondents, for the loan of the said sum of 6,500 dollars, or for the payment of the several sums of money on certain promissory notes, or for giving collateral securities for any debts due to the respondents, either by G. S. or the appellant, as set forth in the bill of the respondents.

That on or about the 18th of *March*, 1819, the appellant, J. B. S., was informed by G. S. that the respondents would loan to G. S. 1,500 dollars in current money, and 5,000 dollars in the notes of the *Bank of Niagara*, on condition that G. S. would procure the appellants to give a mortgage on a certain farm, mills, distillery, and other buildings, situate in the town of *Manlius*, in the county of *Onondaga*, with a bond executed by G. S., and J. B. S., conditioned for the payment of 10,000 dollars, as collateral security for the payment of the 6,500 dollars, and also for the payment of several sums of money then due on promissory notes to the respondents, drawn by G. S., and endorsed by J. B. S., the particular amount of which he does not recollect, and cannot state; and that, in consequence of that information, and at the particular instance and solicitation, and for the sole benefit of G. S., and without any previous agreement or understanding with the respondents, the appellants did, on the 24th of *March*, 1819, execute a mortgage to the respondents of the farm, mills, distillery, and other buildings, for securing the payment of 10,000 dollars *on demand*, and at the same time the appellant, J.

IN ERROR.<br>
........<br>
ALBANY,<br>
February, 1822.<br>
STUART<br>
v.<br>
MECHANICS'<br>
AND FARMERS'<br>
BANK.

*B. S.*, endorsed two promissory notes drawn by *G. S.*, the one for 5,000 dollars, and the other for 1,500 dollars, and, also, at the same time, together with *G. S.*, executed a bond to the respondents in the penal sum of 20,000 dollars, conditioned for the payment of 10,000 dollars *on demand.*

That after the mortgage was executed and delivered to the respondents, *Thomas W. Olcott*, named in the respondents' bill, handed to the appellant, or to *G. S.*, and which this appellant did not recollect, a receipt or memorandum in writing, which was retained by *G. S.*, since which this appellant had not seen it, and could not state the contents thereof.

To this part of the answer of the appellants, the respondents took exception : " For that the defendants have not, in manner aforesaid answered, whether the receipt admitted in the defendant's answer to have been given by *Thomas W. Olcott*, was not received by the defendant, *J. B. S.*, as a sufficiently satisfactory and explicit acknowledgment of the purposes and object for which the said mortgage and bond were in fact given." As to that exception, the appellant, in his further answer, " denied, that the receipt set forth in the respondents' bill, or any other writing, was accepted by him as a sufficiently satisfactory and explicit acknowledgment of the purposes and object for which the said mortgage and bond were executed."

The answer further stated, that at the time that *J. B. S.* agreed with *G. S.* to mortgage the premises in question, *it was expressly* agreed between the appellant and *G. S.*, that the bond and mortgage were to be considered security no *longer than four months* from the date thereof, which *G. S.*, at that time stated was the agreement between him and the respondents, and that the appellants executed the bond and mortgage as collateral security, in pursuance of such agreement. That the receipt given by *Thomas W. Olcott* was not delivered to *G. S.*, or to the appellant, until several days after the delivery of the bond and mortgage to the respondents, and when the same was delivered, containing the stipulation that the bond and mortgage should remain as security for *six* months, instead of four months, as agreed between the appellant and *G. S.*, the appellant, at the time he first saw the said writing, objected to the extension of the time for

IN ERROR.

ALBANY,
February, 1822.

STUART
v.
MECHANICS'
AND FARMERS'
BANK.

which the said bond and mortgage were to remain security, from *four* to *six months*, as contrary to the original agreement, and so expressed his dissent to *Thomas W. Olcott*, and *G. S.*

That the note dated the 23d of *March*, 1819, drawn by *G. S.*, and endorsed by the appellant, for the sum of 5,000 dollars, was for that amount received by *G. S.*, of the respondents, in the bills or notes of the *Bank of Niagara*, and which bank notes were, at the time the same were so received by *G. S.*, at from twenty-five to fifty per cent. discount ; that *G. S.*, immediately after the receiving the notes of the *Bank of Niagara* from the respondents, endeavoured to sell the same to the brokers and others in the city of *Albany*, at a discount, but could not succeed in selling them at any rate of discount. That about the 2d of *April*, 1819, the appellant received from *G. S.* 4,000 dollars of the bills of the *Bank of Niagara* for the purpose of selling the same to the best advantage for *G. S.*, the appellant then being about to depart from the city of *Albany* to *Buffalo*. That he afterwards sold the same bills or notes of the *Bank of Niagara*, at an average loss or discount of forty per cent. for money current in the state of *New-York*, making the real value of the 4,000 dollars of the bills or notes of the *Bank of Niagara*, received by the appellant, for *G. S.*, in current bills or money, 2,400 dollars.

The appellants, by way of plea, alleged and insisted, that from information which they had received, and which they believed to be true, it was corruptly agreed by and between *G. S.* and the respondents, that in consideration of the respondents' loaning to the said *G. S.* 1,500 dollars current money of the state of *New-York*, *G. S.* should purchase of the respondents, at par, 5,000 dollars of the bank notes of the *Bank of Niagara*, when, in fact, and in truth, the said 5,000 dollars of the *Niagara* bank notes were not worth 3,000 dollars in current money of the state of *New-York*. That the respondents did loan to *G. S.* the sum of 1,500 dollars current money, upon the conditions aforesaid ; and that *G. S.* did purchase the 5,000 dollars of the notes of the *Bank of Niagara*, and for the security of which, to the amount of 6,500 dollars, and the promissory notes then in the banking house

of the respondents, endorsed by the appellant for *G. S.*, the mortgage mentioned in the respondents' bill of complaint was executed as collateral security.

The respondents having filed their replication, the cause was put at issue, and witnesses were examined on both sides. The material parts of their testimony are stated in the opinion delivered by the Chief Justice.

IN ERROR.
........
ALBANY,
February, 1822.

STUART
v.
MECHANICS'
AND FARMERS'
BANK.

The cause was brought to a hearing in the Court of Chancery, in *March*, 1821; and on the 3d of *May*, 1821, the Chancellor pronounced the following decree :

" This cause having been brought to a hearing, at the last term of this Court, upon the pleadings and proofs, and upon the opening of the case, the Chancellor suggested, that he was a stockholder in the *Mechanics'* and *Farmers' Bank*; and that it might be doubted whether he had jurisdiction in the case, inasmuch as the statute declares, " that where the Chancellor shall be a party to a suit in Chancery, the bill shall be filed before the Chief Justice of the state," and that he proposed only to hear the argument provisionally, subject to the advice of the Chief Justice in the premises ; and the counsel on each side consenting thereto, the cause was thereupon argued by Mr. *Theodore Sedgwick* and Mr. *H. Bleecker*, counsel for the plaintiffs, and by Mr. *Philip S. Parker*, and Mr. *Abraham Van Vechten*, counsel for the defendants ; and upon subsequent consultation with the Chief Justice, he was of opinion, that the Chancellor was not a party to the suit, within the provision of the statute, and that the Chancellor had the exclusive jurisdiction of the case in Chancery ; and the Chancellor concurring with the Chief Justice in that opinion, and that he could not rightfully decline cognizance of the case, the pleadings and proofs being thereupon duly considered, it is declared, that the renewal of the note for 1,500, and the note for 5,000 dollars, in the pleadings mentioned, by *G. S.* as drawer, and by the defendant, *J. B. S.*, as endorser, were not, under the circumstances of the case, a discharge of the defendant, *J. B. S.*, from the obligation of the bond in the pleadings mentioned, executed by him, and the said *G. S.*, to the plaintiffs, nor any discharge of the defendants, *J. B. S.*, and *Ann*, his

IN ERROR.
••••••••

ALBANY,
February, 1822.

STUART
v,
MECHANICS'
AND FARMERS'
BANK.

wife, from the obligation of the mortgage in the pleadings also mentioned, given to secure the payment of the said bond. And it is further declared, that the loan from the plaintiffs to *G. S.*, on the 24th of *March*, 1819, of 6,500 dollars, as stated in the pleadings, and appearing in the proofs, was not an usurious or corrupt loan, within the meaning of, and contrary to the statute, entitled, "An act for preventing usury." It is, thereupon, ordered, adjudged, and decreed, and his Honour the Chancellor, by the authority of this Court, doth order, adjudge, and decree, that it be referred to one of the Masters of this Court, to ascertain and report the amount of principal and interest due to the plaintiffs from *G. S.*, or from the defendant, *J. B. S.*, and secured by the bond and mortgage aforesaid ; and upon the coming in and confirmation of the Master's report, that the defendant, *J. B. S.*, pay the amount so to be reported, together with the costs of this suit, as against him, and the defendant, and *Ann*, his wife, within thirty days thereafter, or that all and singular the mortgaged premises included in the said mortgage, and which premises are described in said mortgage, or so much thereof as shall be necessary to raise the said principal, interest and costs, and which can be sold separately, and without material injury to the parties, or either of them, be sold by one of the Masters of this Court in the county of *Onondaga*, he giving six weeks notice of the time and place of sale, in one or more of the public newspapers printed in the said county, and causing a copy of the notice to be affixed upon the outward door of the courthouse of the said county. And it is further ordered, that the said Master making such sale, execute to the purchaser or purchasers of the said premises, a good and sufficient deed or deeds of conveyance for the same, and bring the moneys arising from the said sale into this Court, and deposit the same with the register or assistant register of this Court ; and that he make report to this Court of his proceedings in the premises, with all convenient speed. And it is further ordered, that the said register or assistant register, out of the said moneys so to be deposited, pay to the plaintiffs' solicitor their costs of this suit, as against the defendants, *J. B. S.*, and *Ann*, his wife, to be taxed, and also

the amount of principal and interest which shall be report-
ed due to the plaintiffs as aforesaid, with the lawful interest
thereon, and the residue of said proceeds, if any, to remain
in Court, subject to the order thereof. And it is further
ordered, that the bill, as to the defendant, *Nathan Stewart*,
be dismissed, with the costs of the said *Nathan Stewart*, to
be taxed and paid by the plaintiffs."

ALBANY,
February, 1822;

STUART
v.
MECHANICS'
AND FARMERS'
BANK.

From this decree the defendants below appealed to this
Court.

*Van Vechten*, and *E. Williams*, for the appellants, con-
tended, 1. That the appellant, *J. B. S.*, being a mere surety
for *G. S.*, by extending the time of payment of the
notes, for which the mortgage was given, as collateral
security, he was discharged from all liability on his
bond, and the mortgage, also, consequently, discharged.
(7 *Johns. Rep.* 332.  10 *Johns. Rep.* 587.  1 *Caines' Cas. in
Error*, 1.)

2. The loan made by the respondents to *G. S.*, on the
24th of *March*, 1819, for which the bond and mortgage
were given as collateral security, was founded on an usuri-
ous and corrupt agreement, and, therefore, void. (1 *Johns.
Ch. Rep.* 6. 536.  16 *Johns. Rep.* 375.  1 *Esp. N. P. Rep.*
11.  1 *Bro. Ch. Cas.* 199.  3 *Johns. Ch. Rep.* 399.  *Ord
on Usury*, 69. 74.)

3. That if the loan of 6,500 dollars was not usurious,
yet it was a hard and unconscientious bargain, which ought
not to be enforced in a Court of equity.  (1 *Fonbl. Equ.* B.
1. ch. 4. sec. 6.  2 *Bro. P. C.* 183.)

*H. Bleecker*, and *T. Sedgwick*, for the respondents, in-
sisted, 1. That it was not stated in the answer, that the
notes for 1,500 dollars, and 5,000 dollars, were renewed,
without the knowledge and assent of the appellant, *J. B.
S.* This point, was not, then, put in issue by the replica-
tion. Every material fact must be put in issue by the
pleadings; and no interrogatories can be put, that do not
go to a fact put in issue. (*James* v. *M'Kernon*, 6 *Johns.*

IN ERROR.
········
ALBANY,
February, 1822.

STUART
v.
MECHANICS'
AND FARMERS'
BANK.

*Rep.* 543.) But, admitting, for the sake of argument, that the appellant knew nothing of the extension of the agreement between *G. S.* and the respondents, he is bound by it, as he has enabled *G. S.* to obtain the credit. (*Lickbanord* v. *Mason*, 2 *Term Rep.* 70., per *Ashhurst*, J.) But the fact is, that the appellant did know of the terms of the receipt. He knew, at least, that the terms of the agreement were to be reduced to writing, and that was enough to put him on inquiry. The written receipt provides expressly for the renewal of the notes. The appellant must, therefore, be considered as assenting to it. But he was not, in truth, a mere surety, but a principal, for he participated in the receipt of the money.

2. As to the question of *usury*, they contended, that it was not sufficiently alleged in the answer, and, of course, not properly put in issue. There should have been an averment that the notes of the *Niagara* bank were of an under value, specifying how much. (2 *Maule & Selwyn*, 377.) A general plea of usury is bad. To constitute usury, there must be a corrupt agreement, an intent to violate the statute. (*Ord on Usury*, 37. 54, 55. 59. 1 *Bos. & Pull.* 151. 1 *Lutw.* 271. *Doug.* 733.)

3. As to its being a hard and unconscientious bargain, that is an objection for *G. S.* to urge; but it cannot discharge the surety. Besides, it was not made a ground of defence in the Court below. Mere inadequacy of price is not ground for relief against a bargain. (1 *Fonbl. Equ.* 238. 130. 1 *Madd. Equ.* 212, 213. 2 *Bro. Ch. Cas.* 175. 2 *Johns. Ch. Rep.* 22.)

SPENCER, Ch. J. The grounds assumed by the appellant's counsel for the reversal of the decree, are:

1. That the appellant, being surety only for the debt of 6,500 dollars due from *G. S.* to the respondents, and they having, without the appellant's knowledge and consent, extended the time for the payment of the debt, by a negotiation between them, whereby the appellant is prejudiced, and exposed to the eventual loss of the debt, the appellant and the mortgage he gave, are discharged, and exonerated from the debt.

IN ERROR.
........
ALBANY,
February, 1822.

STUART
v.
MECHANICS
AND FARMERS'
BANK.

2. That the loan made to *G. S.*, on the 24th of *March*, 1819, of $6,500 by the respondents, was usurious and corrupt, and that, therefore, the bond and mortgage mentioned in the pleadings, and given as collateral security, are void.

3. That the loan, if not usurious, was an unconscionable transaction, and such as a Court of equity will not enforce.

1. The first point admits of little doubt or difficulty. It is an undeniable principle, that the decree of a Court of equity must be founded on some matter put in issue between the parties. The examination of witnesses must be confined to facts asserted on the one side, and denied on the other. It is competent for a defendant to set up in his defence, by way of answer or plea, any matter which goes to defeat the plaintiff's claim, and if such fact be denied, and the defendant put to the proof thereof, by a general replication, the defendant must then support his defence by evidence. A Court of equity is as much bound to decide according to the allegations and proofs, as a Court of law. And if, in the examination of witnesses, facts come out which, had they been alleged, would furnish ground of relief, or defence, such facts must be disregarded, unless they are warranted by the allegations of the bill or answer. This doctrine was advanced, and fully recognized by this Court, in *James* v. *M'Kernon*, (6 *Johns. Rep.* 559, 560.) The contrary doctrine would be mischievous, as it might entrap the parties, and entirely throw them off their guard. The interrogatories are framed with a view to the points in issue; and if witnesses, not confining themselves to the interrogatories, go beyond them, it could not be foreseen; and thus, facts that might have been controverted and disproved, had the party apprehended an attempt to prove them, come upon him by surprise. Should a Court of equity take cognizance of facts, thus improperly in evidence, and found a decree on them, the most manifest injustice would result. The only safe rule is, to proceed on the allegations of the bill and answer, and on the matters in issue between the parties, and to discard every thing not fairly in issue.

Now, in this case, the answer does not allege, nor set up, that the extension of the credit to *G. S.* was without the

IN ERROR.
........

ALBANY,
February, 1822.

STUART
v.
MECHANICS'
AND FARMERS'
BANK.

knowledge, and against the consent of the appellant. It does not question that transaction, in any shape, or form. The bill states the renewal of the notes by *G. S.*, with the appellant's endorsement; yet no suggestion is made in the answer, that the appellant was uninformed of, or ignorant of the extension of the credit to *G. S.* Without examining the proofs, my opinion clearly is, that the appellant cannot now draw in question the extension of the credit, as discharging him, admitting him to have been a surety, and admitting that he was prejudiced thereby, because, he has not taken that ground in his answer, and because by permitting him now to do so, would be inconsistent with the defence, and a total surprise on the respondents.

I do not mean to be understood as admitting, that the facts, could we take notice of them, make out any defence on that point. On the contrary, I think, clearly, that they do not.

2. Upon the question of usury, it has, also, been objected, that the answer is insufficient, in omitting to state the respondent's knowledge of the irresponsibility of the *Bank of Niagara*, and its inability to redeem its bills, and that they were depreciated. I consider the allegations sufficient, especially as the answer was not excepted to; and no application has been made in the Court below to suppress the evidence, nor any objection taken, either to the answer, or the proofs in that Court. The question has been discussed in the Court below on that ground; and it would be too rigid in the Court of Appeals, to refuse entertaining a question, the facts in respect to which, had been examined into in the Court of Chancery, without objection there, because there were technical omissions in the pleadings.

The material facts on which this question depends, are, that *G. S.* was indebted to the bank prior to the 23d. of *March*, 1819, in the sum of 2,753 dollars and 64 cents, upon several notes, of some of which he was drawer, and of others endorser. He made application to some of the directors, a few days before that period, for a loan of 5,000 dollars, upon the ordinary terms, and apprehending, from what passed, that he could not obtain such loan, he made a

IN ERROR.
........
ALBANY,
February, 1822;
STUART
v.
MECHANICS'
AND FARMERS'
BANK.

written proposal for a loan of 2,500 dollars, in current money, and for a loan of 5,000 dollars, in the bills of the *Niagara* bank, offering to secure what he then owed the respondents, together with these additional loans, by a mortgage to be executed by the appellant on the *Jamesville* property, and, also, by his and the appellant's bond.

The bank accepted his terms, with a modification, reducing the loan proposed of 2,500 dollars, in current money, to 1,500 dollars. To this *G. S.* acceded, and, thereupon, the loan was effected, and the proposed security given.

It appears, that on the 23d of *March*, 1819, when the loan was completed, the credit of the *Bank of Niagara* was impaired, to a certain extent. That bank had, in the month of *January* or *February*, 1819, refused to receive their bills, and redeem them, with specie, or in bills of the banks of *New-York* or *Albany;* and on the 27th of *February*, 1819, the *Bank of Niagara*, being indebted to the respondents in about 20,000 dollars, secured the payment of the debt by notes, bonds, and mortgages, held by the *Bank of Niagara*, and by them assigned to the respondents; and as a further security, the *Bank of Niagara* gave to the respondents their bond and mortgage for the amount of the debt; so that, as it appears from the testimony of *T. W. Olcott*, the cashier of the respondents, and *I. Q. Leake*, the then cashier of the *Bank of Niagara*, the securities were an ample guaranty against any loss, by the respondents, on account of that debt.

The bills of the *Bank of Niagara*, lent by the respondents to *G. S.*, were received by them of *I. Q. Leake*, about the 24th of *February*, 1819. They were deposited with the respondents, as collateral and further security, for the debt due them from the *Bank of Niagara*. The amount deposited was 10,000 dollars. They were thus deposited, with authority to lend or exchange them, at par, and on condition of there being passed to the credit of the *Bank of Niagara*, on account of the debt, whenever they should be disposed of by the respondents; and it appears, by the testimony of *T. W. Olcott*, that the sum of 5,000 dollars, the amount lent to *G. S.*, was, in consequence of that loan, credited to the *Bank of Niagara*, by

IN ERROR.
........
ALBANY,
February, 1822.

STUART
v.
MECHANICS'
AND FARMERS'
BANK.

the respondents, in their account with that bank, on the 29th of *March*, 1819, and was, at the same time, endorsed on the bond given by the *Bank of Niagara* to the respondents. This credit was given on the day *G. S.* received from the respondents the *Niagara* bills. It appears, from the testimony of *Olcott*, that when *G. S.* applied for the loan of 1,500 dollars, and 5,000 dollars, in *Niagara* bills, he assigned as a reason, that he owed the *Bank of Niagara* 1,000 dollars, which he could pay in the bills of that bank, and that the residue he could disburse in the vicinity of *Buffalo*, in the purchase of provision, fuel, and other articles, for the steam boat.

There is no evidence in the cause, of the value of the bills of the *Bank of Niagara*, in the city of *Albany*, or in this part of the state, on the 23d of *March*, 1819, or at any time about that period, except from mere hearsay.

Several merchants, and others, residing in *Buffalo*, have been examined. Some of them depose, that the merchants there received *Niagara* bills, in payment of debts, except where they were confident of getting better money, if they required it; and that these bills were generally taken by merchants there for goods, at par. Others considered the bank as then insolvent, and refused to take their bills. And, it seems, that by subsequent events, the opinion is now universal, that the bank was then insolvent. We have no direct evidence what loss, or whether any has been sustained by *G. S.*, on the bills he received. These are the material facts on which we are now called upon to pronounce whether the loan to *G. S.* was usurious or not.

In this, as in every other case, where the question of usury is raised, all the facts and circumstances are to be taken into view; and as Ch. J. *Eyre* said, in *Hammett* v. *Yea*, it is to be analyzed and reduced to all the parts of which it is composed, and to all the conclusions of fact which fairly result from the whole of the evidence; and when it is so examined, the question is, whether this was a loan of money contrary to the statute; whether the respondents, under the device of lending part in the bills of their own bank, and part in the bills of the *Bank of Niagara*, have, in effect, *intentionally and knowingly*, taken more than at the rate of

IN ERROR.
........
ALBANY,
February, 1822.

STUART
v.
MECHANICS'
AND FARMERS'
BANK.

six per cent. interest, for the loan and forbearance of money. I say, *knowingly and intentionally* ; for it cannot be pretended, that unless the respondents knew, that the bills of the *Niagara* bank were depreciated, and not intrinsically worth their nominal amount, and intentionally put them off at their nominal value, with such knowledge, it would be a case of usury. There can be no doubt, and I shall not stop to examine the numerous cases to the point, that if, in a negotiation for a loan of money, the lender impose on the borrower, goods, in part or in whole, at a higher value than they are worth, such device is within the statute, and usurious. The same consequence follows, if the lender impose upon the borrower, as part of the condition of the loan, the depreciated paper either of an individual or bank, at a higher value than it is worth. When I say *impose,* I think there is a distinction between a voluntary and spontaneous offer, on the part of the borrower, to take money in part, and property in part, as a condition of the loan, and the imposition of such terms by the lender, as matter of evidence, to show the real nature of the transaction, and the intent of the parties. I am not to be understood, that the consent of the borrower to pay a higher rate of interest than the law allows, would have the least effect to render the transaction legal; yet, where goods, or the notes of a bank, or a third person, constitute part of the loan, and the value of such goods or notes was uncertain and fluctuating, a voluntary and spontaneous proposition to receive on a loan, part money, and part in such goods or notes, made by a person whose credit stood well, would not seem to be usurious.

The appellant's counsel rely on the testimony of *G. S.,* to prove, that the loan of 6,500 dollars, made to him by the respondents, on the 23d of *March,* 1819, was usurious ; and they rely, as a strong fact, in the transaction, on the circumstance, that he applied to one or more of the directors, with a view to negotiate a loan in the ordinary way, for 5,000 dollars ; and that during the negotiation, he became satisfied, that he could not obtain in current bank bills to the amount he desired, and then agreed, if the respondents would lend him 2,500 dollars, in current bank

IN ERROR.
........
ALBANY,
February, 1822.

STUART
v.
MECHANICS'
AND FARMERS'
BANK.

bills, he would receive 5,000 dollars in bills of the *Bank of Niagara*, and procure a mortgage from the appellant, to be executed on the *Jamesville* property, as a collateral security. It has been urged, that this furnishes satisfactory proof, both of the necessities of *G. S.*, and of the intention of the respondents to take advantage of his situation, by putting upon him the 5,000 dollars in *Niagara* bills, in consequence of the accommodation which the loan of 1,500 dollars, in current money, afforded him. It has, also, been urged, that *G. S.'s* proposition was for a loan of 2,500 dollars, in current money; and that that part of the loan was reduced by the respondents to 1,500 dollars, when the other part of the proposition, the loan of 5,000 dollars, in bills of the *Niagara* bank, was acceded to; thus showing, that the respondents themselves made a material distinction between lending in their own notes, and those of the *Bank of Niagara*; and the further fact is relied on, that the loan of 5,000 dollars was for four months, without interest.

Now, by referring to the evidence of *G. S.*, it will be seen, that he does not attribute the conduct of the respondents, in being willing to lend only 1,500 dollars, in current bills, whilst they agreed to his proposal to lend the 5,000 dollars, in the bills of the *Bank of Niagara*, either to his want of credit, or to a disposition to oppress and take advantage of him, or to the circumstance, that he was then indebted to the respondents, or to the more important fact, that the bills of the *Niagara* bank were not worth their nominal amount. He is altogether silent upon these material and important points. It is impossible for this Court to infer any thing prejudicial to the respondents, from the mere fact, that they were unwilling to lend more than 1,500 dollars, in current money, and were willing to lend 5,000 dollars in the bills of the *Niagara* bank. Persons conversant with banks, must know, that there are periods when prudence dictates a forbearance to lend their funds. But there was a good reason, without referring it to a disposition to commit usury, why the respondents should be willing to lend the bills of the *Bank of Niagara*, in preference to their own bills. The *Bank of Niagara* was indebted to the respondents in upwards of 20,000 dollars, and on the

IN ERROR.
........
ALBANY,
February, 1822.

STUART
v
MECHANICS'
AND FARMERS'
BANK.

apposition, that the bank was solvent, but had declined redeeming their paper, it was the dictate of prudence to render themselves even more secure, by a compliance with the proposition made by *G. S.*

The deposition of *G. S.*, in no part of it, warrants the idea, that either he, or the respondents, did believe, or had any reason to believe, that the *Bank of Niagara* was then insolvent, or that their insolvency was suspected. On the contrary, it appears, from the testimony of *Thomas W. Olcott*, that *G. S.* assigned as a reason for applying for the bills of the *Bank of Niagara*, as part of the loan, that he owed that bank a debt of 1,000 dollars, which he could pay in these bills, and the residue he could disburse in the vicinity of *Buffalo*, in the purchase of provision, fuel, and other articles, for the use of the steam boat.

It is a fact, also, worthy of consideration, that the appellant, to whom, *G. S.* states he made known his application, and who was to receive, and did receive, 4,000 dollars of these bills, (the 1,000 dollars having been paid and received in discharge of *G. S.'s* note to the *Bank of Niagara*,) should be willing, he having, as it is alleged, no interest in the money, but being merely a surety, to mortgage his property, which was deemed an adequate security, and to unite with *G. S.*, in his bond for this very loan, if he had then considered it either a usurious, or a hard and oppressive loan, as regards *G. S.*

I have already observed, that there is no evidence what the notes of the *Bank of Niagara* were worth in the city of *Albany*, when the loan was contracted. It is not shown, that they were under par here; and it is not shown, that the respondents had not good reasons to believe that the bank was perfectly solvent. It is true, that the respondents knew that the negotiations for a loan in *New-York* had failed; but *I. Q. Leake*, who gave that information, declares, it was still hoped the *Bank of Niagara* would resume its business; and I cannot find in this case, evidence warranting the Court in saying, that the respondents knew, or had reason to believe, when this loan was effected, that the *Bank of Niagara* was insolvent because it had refused to

IN ERROR.

ALBANY,
February, 1822.

STUART
v.
MECHANICS'
AND FARMERS'
BANK.

redeem its bills in the winter preceding, or because their negotiation for a loan had failed. A bank may be quite solvent, notwithstanding it fails to redeem its bills. This we know to have happened in several instances, where the ability and solvency of the banks have been, afterwards, fully established. A man, says *Dallas*, J. (5 *Taunt. Rep.* 548.) may be in difficulties, and not stop payment; he may stop payment and not be insolvent, and he may be insolvent, and not a bankrupt.

There is a fact in the case which appears to me to be a strong manifestation of the purity of this loan. I have already stated, that the evidence clearly established the fact, that the respondents had security from the *Bank of Niagara*, for the debt due to them from that Bank They had, therefore, no inducement whatever to lend the bills of the *Niagara* bank, at par, when they were under par; or, in other words, the respondents had no motive to defraud *G. S.*, by inducing him to take these bills at their nominal value, when they were depreciated; for if any thing was gained on the one hand, or lost on the other, by the negotiation, the gain would not accrue to the respondents.

It has been very much relied on, that *G. S.* was indebted to the respondents when this loan was effected. He was so; but it does not appear, that he was pressed for the debt, or that his credit was impaired. His subsequent insolvency, soon after this transaction, and his deep defalcation, for aught that appears, was unknown and unexpected by the respondents.

Judging of this case from the facts before us, my conclusion is, that the loan was not usurious; but, on the contrary, that the transaction was fair and upright, neither contaminated with usury, nor marked with oppression or fraud. In my judgment, therefore, the decree ought to be affirmed.

*April* 3. This being the opinion of the rest of the Court, (HUNTINGTON, Senator, dissenting,) it was, thereupon, OR-DERED, ADJUDGED, and DECREED, that the decree of the Court of Chancery be in all things affirmed, with costs, &c.

Decree of affirmance.