DETERMINED IN THE

# Supreme Court of Judicature,

OF THE

# STATE OF NEW JERSEY,

AT FEBRUARY TERM, 1826.

---

### NOAH CLARK *v.* JONATHAN BADGLEY.

#### IN ERROR.

1. A contract *to take* for a loan of money, more than legal interest, though no illegal interest is actually taken upon it, is usurious.

2. But the lender does not subject himself to the *penalty* of the statute unless he *takes, accepts or receives* more than the legal interest.

3. If the original agreement is usurious it is immaterial whether the illegal interest is secured by a distinct instrument or is included in the instrument which secures the principal.

---

*Scudder,* for the plaintiff in Error.

*Chetwood,* for the defendant.

The opinion of the Court was delivered by

EWING, C. J.   In the court below, Clark declared in the common form against Badgley upon a bond.   Badgley

pleaded that the bond was usurious and void, and a verdict was found and judgment rendered for him. Clark seeks here to reverse the judgment, because the case made by the plea does not bring the bond within the reach of the statute against usury. The plea is in substance as follows :—Before the making of the bond it was corruptly agreed between the parties, that Clark should lend Badgley $250 for one year, and that Badgley for the loan of the $250, and for the forbearance of that time should purchase of Clark one-half of an eight day clock for thirty-seven dollars and fifty cents, being a price over and beyond the value, and also pay interest on the $250, at seven per cent.; that Badgley should permit Clark to retain the one-half of the clock, and should re-sell the same to him for $20, a less price than the purchase money ; and that for securing the payment of the $250, with the interest, Badgley should give a bond to Clark, conditioned for the payment of the $250, with interest at seven per cent. The plea then states that, in pursuance of the agreement, Clark lent to Badgley the $250, and sold to him the one-half of the clock for the said sum of $37.50, to be retained and re-sold to Clark by Badgley for the sum of $20, and for securing the repayment of the $250, with interest, Badgley made the bond in question, and purchased and Clark sold the one-half of the clock ; and Badgley in the plea then avers that the difference between the sum at which he bought one-half of the clock and agreed to re-sell the same to Clark, and which he did re-sell it to him for and the interest of the $250, reserved and made payable by the condition of the bond, exceeds the rate of seven dollars for the forbearance of $100 for one year, contrary to the form of the statute.

This plea is alleged by the counsel of the plaintiff in error to form no bar to the action for several reasons.

1. Because it does not shew an actual taking by Clark of more than legal interest—for, it is said, that where a bond is good on the face of it, or in other words where usury

does not appear by the bond itself, not only an agreement for a sum beyond the legal measure for forbearance must be shewn, but an actual payment of such sum. There must be, not only a corrupt agreement but an actual taking under such agreement, or there is no usury.

This position is entirely unsound. The corrupt *agreement* vitiates the bond, note, or contract, and hence the corrupt agreement only needs be pleaded. If the lender contracts for greater interest than the statute allows, so that the agreement is corrupt at the time of the loan, the contract is void. To this result no farther act on the part of either lender or borrower is required.‾ The overwhelming power of the statute sweeps away the security. The lender is not then indeed subjected to the punishment prescribed by the statute. To fasten the penalty upon him it must be shewn that he has *actually taken* beyond the legal measure. And this will be his just fate whatever may have been the nature of the original agreement, whether legal or corrupt. It is clear that to subject the usurer to punishment, an actual taking of illegal interest must be averred and shewn. And this erroneous objection can be sustained only by an omission to discriminate between what will vitiate the contract and what will consign to punishment.

The plain and obvious provisions of our statute against usury prove the doctrine I have stated. By the first section, *Rev. Laws* 269, no person shall, upon any contract, take directly or indirectly for the loan of any money, wares, merchandise, goods or chattels, above the value of seven dollars for the forbearance of one hundred dollars for a year, and after that rate for a longer or shorter time. By the second section, all notes, bills, bonds, mortgages, contracts, covenants, conveyances and assurances, which shall be made for the payment or delivery of any money, wares, merchandise, goods or chattels, so to be lent, on which a higher interest is *reserved or taken* than is thereby allowed, shall be utterly void. By the third section, if any person

19

shall by way or means of any bargain, agreement, &c., *take, accept or receive,* directly or indirectly, for the loan of, or the forbearance or giving day of payment for, any money, &c., above the value of seven dollars for one hundred dollars for one year, and after that rate, &c., every person so offending shall forfeit the full value of the money, wares, merchandise, goods or chattels so lent, sold, bargained, contracted for or exchanged; one moiety to the use of the State, and the other to the prosecutor, to be recovered, with costs, by action of debt, or on the case, in any court of record having cognizance thereof.

A long and uniform series of decisions on the English statutes similar in substance to our statute is presented by the reports.

In the case of *Body and Tassel,* 3 *Leon.* 205, it was holden in the Exchequer that, if a man lendeth money and for the forbearing of it *contracts* for more than £10 in the £100, the bond made for it is void presently, and if he doth *receive* excessive interest he shall forfeit treble the value. In *Browne* v. *Fulsbye,* 4 *Leon.* 43, upon the *Stat.* 13, *Eliz. Ch.* 8, of usury, the case was thus: A. borrowed of B. £80, and was bound in an obligation to pay him £90 at the end of the year. It was the opinion of the justices, that although the £90 was tendered and B., the lender, did tell the same over, yet if he take and accept but of £80, it is not usury within the statute to make a treble forfeiture, but yet in that case the obligation itself is void. In *Roberts* v. *Trenayne, Cro. Jac.* 507, a contract was declared usurious although nothing had been received by the lender, and although the payment of the illegal interest was by the contract to depend on a contingency. In *Rex* v. *Allen, Sir Thomas Raym.* 196, *Justice Twisden* says: There is this difference, if the party who lends the money *contracts* for more than six per cent., all the assurance is void; but if he doth not contract for more than the statute allows, and afterwards *takes* more, the assurance shall not be avoided, but the party shall forfeit.

*De Grey, Ch. Just.* 2 *Bl. Rep.* 862, defining the nature of
an usurious contract enumerates only two things as essential
—*first,* a loan, and *second,* that illegal interest is to be paid
for such loan. In *Lloyd, qui tam, &c.,* v. *Williams,* 3 *Wils.*
253, it is said : If a man contracts to take for a loan of
money above £5 per centum per annum, this contract is
void, and yet it seems the penalty may not be incurred if he
never takes or receives by means of such contract above five
per cent. In *Fisher* v. *Beasley, Doug.* 237, *Lord Mansfield*
says : There are two branches of the statute—under the
first, every agreement, contract and security for more than
legal interest is void. But under the second, the penalty is
incurred only by taking, accepting and receiving more than
legal interest. In the case of *Lowe* v. *Waller, Doug.* 736,
the bill of exchange on which the action was brought was
fair on its face—the usury was extraneous—no money had
been paid, nor anything taken, under the corrupt agree-
ment. Yet was the bill of exchange held void, and that
too in the hands of an endorsee for valuable consideration
and without notice of the usury.

The cases of *Rose* v. *Dickson,* 7 *John.* 196; *Dunham* v.
*Dey,* 13 *John.* 40; *Swartwout* v. *Payne,* 19 *John.* 294;
*Stuart* v. *Mechanics and Farmers Bank,* 19 *John.* 496,
prove that the same doctrine is recognized in New York as
in the English Courts.

The counsel of the plaintiff in error sought to sustain his
position by a reference to approved precedents, and I freely
acknowledge the legitimacy and propriety of such an appeal.
One of the precedents cited by him, 7 *Wentw.* 202, is a dec-
laration in a *qui tam* action for the penalty under the statute
against usury, and of course affords no aid in our present
inquiry ;—but there are precedents of undoubted authority,
where the corrupt agreement, and the making of the bond
or note or other security in pursuance of it, and the actual
taking of the illegal interest are all averred. Now a very
fair argument may be hence drawn, that the facts stated in

them form a bar on the ground of usury:—but there the argument ends. No sound inference can be drawn that other facts or fewer facts will not suffice. Let us however look somewhat farther into the great store-house of precedents. In 7 *Wentw.* 455, and 2 *Chitty* 466 and *Story's Pleadings* 200, the plea sets out the corrupt agreement, and that the bond was given in pursuance of it, but does not aver the taking or receipt of anything by way of illegal interest. In the case of *Morse* v. *Wilson*, 4 *T. R.* 353, the taking or receipt of the illegal interest is not averred, and this case demands peculiar attention because the plea was sustained on a demurrer and judgment given for the defendant. The law then as deducible from these precedents is very adverse to the conclusions of the plaintiff's counsel.

2d. The plea is said to form no bar, because the contract respecting the clock may be distinguished from the bond; the Court should therefore separate them, and while the former, if usurious, may be defeated, the bond, which stipulates only for the repayment of the sum actually loaned with the legal interest, should be sustained.

If this position be sound, the statute is a powerless spectre, and poorly deserves the encomium bestowed upon it by *Lord Mansfield*, when he said, *Cowp.* 114; "Where the real truth is a loan of money, the wit of man cannot find a shift to take it out of the statute." The design of the statute was to restrain the practices of the usurer by the instrumentality of his cupidity and his fears, by subjecting his principal to hazard and by taking from him all legal means of enforcing his contract. The design is abortive, if evasion be so easy. The truth is, the loan of the money, the execution of the bond, and the sale of the clock, are all parts of one contract, the object of which was to cover an illegal action; and where the corrupt agreement is in fact one contract the statute avoids the whole into how many parts soever ingenuity may have subdivided it. It does not stop short when a single head of the Cerberus is lopped off. It is sat-

isfied only by the extinction of life. The case of *Roberts* v. *Trenayne, Cro. Jac.* 507, is in point. Mary Addington agreed to lend Christopher Cory £150, and for securing the payment to take a lease of a close for sixty years, on condition that if he paid the £150 at the end of two years, the lease should be void, and Cory agreed for the forbearance for two years to pay her for interest yearly £22, 10s. 0d. quarterly, if she should so long live. In performance of the agreement she lent the £150, he made the lease for sixty years, and granted to her by fine an annual rent of £22, 10s. 0d. to be paid quarterly if she lived so long. " It was moved whether this lease being taken for the payment of the principal money, and not for the payment of any part of the usury be within the statute to make the bargain void? It was resolved that it is, because it is for the security of the money lent upon interest and for the security of that which the statute intends he should lose, for otherwise it would be an evasion of the statute that he would provide for the securing of the principal, whatsoever usurious bargain was made, which the law will not permit." In *Fountain* v. *Grimes, Cro. Car.* 252; " If there had been any provision made for the repayment of the principal, although not expressed within the bond, it had been an usurious and lending within the statute." In the case of *Morse* v. *Wilson*, already mentioned, the bond was for the repayment of the principal sum loaned with the legal interest, and at the same time another instrument of writing was executed intended to secure to the lender a farther sum, which, with the interest in the bond, exceeded the legal rate. The bond was adjudged usurious and void. In *Bridge* v. *Hubbard*, 13 *Mass. Rep. Chief Justice Parker* says, " Within the equity if not the words of the statute, a note or other instrument given to secure the unlawful interest itself must be void. Otherwise by giving one note for the principal and another for the unlawful interest they would both be good, the first as containing no reservation of interest, and the second as not containing any

promise to pay any interest on the sum secured by it. Whereas both notes given under such circumstances would be void, being evidence of one contract and that an unlawful one." In *Swartwout* v. *Payne*, 19 *John.* 294, *Chief Justice Spencer* says, " It is immaterial whether the illegal interest was reserved and made payable by a distinct note or was incorporated into one note. They are considered as one assurance and all void." The doctrine in *Pollard* v. *Scholy, Cro. Eliz.* 20, mainly relied on by the plaintiff's counsel, upon this head, does not differ from these cases. There were two distinct, substantive, independent contracts, and upon this ground the decision was made. "The opinion of the Justices was," says the reporter, " that the statute doth not make the contract void which was duly made, but doth only avoid all contracts for usury ; and this last contract is void, being against the statute, but the first was good, being made *bona fide*." It was no part of the first original agreement, as in the case before us, that more than legal interest for the forbearance should be paid.

3d. It is objected to the plea that there is no allegation of the delivery of the clock, or that it was resold to Clark by Badgely, or that the money for the clock was paid ; for it is said the word " sold " contained in the plea does not imply a payment.

Without invoking the sanatory influence of the verdict, it is enough that an agreement was made and is shewn, whereby Badgely bound himself to the illegal exaction. As to the delivery, by the terms of the agreement no delivery was to be made. The clock was not to leave the possession of Clark. It was to perform its office in this affair while still keeping for him " the note of time." The cases already cited fully shew that actual payment is not necessary. In the case of *Morse* v. *Wilson*, the bond was for the payment of the principal sum loaned with legal interest, and by the accompanying instrument the borrower was bound for payment to the lender of a certain portion of the profits a trade

carried on by the borrower with others, and no averment in the plea that anything had been paid. To the plea the plaintiff demurred, because it did not appear that there were any such profits arising during the time of forbearance mentioned in the plea, or that anything by the agreement agreed to be paid, together with the interest to be paid by the bond, exceeded the legal rate of interest. But the plea was sustained and judgment given for the defendant, and *Lord Kenyon* said : " The simple question is whether this is not an agreement to receive more than the £5 per cent. allowed by law for the forbearance of a loan. Most unquestionably it is—and it is therefore void."

4th. The plea is farther said to be defective, because it is not sufficient to state generally that unlawful interest was taken but what was taken for unlawful interest must be stated. The rule as laid down by *Comyns, tit. Pleader,* 2 *W.* 23, and for which he refers to 3 *Mod.* 35, the same case which was cited by the plaintiff's counsel from 2 *Showers* 329 is, the defendant by his plea must shew the usurious agreement specially, and how much more than legal interest was given. In the case of *Hill* v. *Montagu* read by the plaintiff's counsel from 2 *M. and S.* 377, the plea, which was adjudged bad, merely stated that the bond was given in pursuance of a corrupt contract whereupon and whereby there was reserved above the rate of £5 for the forbearing of £100 for a year contrary to the form of the statute—*Lord Ellenborough* said, " The corrupt contract ought to be particularly set forth and the usurious interest, that the party may know how to answer." The plea in the present case conforms to the very letter of the rule. The usurious agreement is specially shewn. It states the agreement to sell the clock for $37.50 and to resell it for $20, and avers that " the difference between the sum at which he bought one-half the said clock and agreed to resell the same to the said Noah and which he did resell it to him for and the interest of the said sum of $250 so reserved and made pay-

Clark *v.* Badgley.

able to the said Noah by the condition of the said writing obligatory, exceeds the rate of seven dollars for the forbearance and giving day of payment of one hundred dollars for one year contrary to the form of the statute."—It was not necessary in this averment to repeat the sums; they had been previously stated and are sufficiently referred to. With no greater particularity are these averments to be found in approved precedents.

The plea, taking the facts alleged in it to be true, as by the verdict, the defendant is entitled to 'claim, is sufficient in my opinion to bring the case within the statute against usury and to form a bar to the action.

FORD, J. This writ of error is to reverse a judgment after verdict, on account of an error, in pleading the statute of usury, to a bond. The plea sets up the corrupt agreement, in substance, as follows, viz: That Clark should lend Badgley $250, for which Badgley should give a bond payable in one year, with interest, and should also purchase of Clark one-half of an eight day clock, at an exorbitant price of $37.50, and resell it to Clark for only $20 without removing it; then it states that the loan was made, the bond given, and the purchase and resale of the clock made, in conformity to the agreement; and then it concludes with averring that the interest on the bond, together with the difference between what the clock was purchased and resold for, exceeded the rate of seven per cent. The plea does not aver that the difference amounts to $17.50, but leaves that fact to be made out by calculation; the want of which averment is assigned for error.

The plea must set out the two sums in the agreement with so much certainty, as to shew to the court that they exceed seven per cent. Now it represents *one* of these sums to be seven per cent. on $250; and the court readily perceives this to be $17.50. It represents the other sum to be, the *difference* between $37.50 and $20, and the court as readily perceives this to be $17.50 more. *Id certum est quod certum*

*reddi potest.* The difference carries such certainty on the face of it as to preclude equally the use of further evidence, or the possibility of dispute. In 2 *Chit.* 514 there is a similar averment, that £4 and the interest on £50 (not averring how much the interest on £50 amounts to) exceeds the rate of five per cent.

The plaintiff assigns a further error in the plea for not averring that Badgley *paid* the $17.50 on the clock. But it is immaterial whether he paid it or not. If he agreed or promised to pay it at the time of effecting the loan, the agreement became corrupt under the statute, and the transaction being corrupt in part is wholly so in law by the very terms of the act.

Judgment affirmed.