SLOSSON *vs.* DUFF.

Loaning uncurrent money, upon an agreement that the amount loaned shall be repaid in current funds, does not amount to usury where the discount upon the money loaned is very trifling, and the same will pass current in the market, in the way of trade.

Such a loan is not a violation of the statute, unless there is something in the transaction from which it is to be inferred, as a matter of fact, that it was a mere contrivance to obtain more than the legal rate of interest by loaning bills which were not intrinsically worth their nominal amount; and where it does not appear that *the money loaned was not worth*, to both parties, the amount at which it was received by the borrower.

*It seems* that the plaintiff in a junior judgment cannot set up the defence of usury against the claim of a plaintiff in a prior judgment to the surplus moneys arising from the sale of premises upon which both judgments are liens; without consenting to the allowance of the amount actually due upon the prior lien.

IN EQUITY. This case came before the court upon exceptions to a master's report. The defendant James Duff and one Alfred Ivers, being partners, were on the 4th of December, 1846, indebted to James Burtus in the sum of $934,94, to Peter Morris in the sum of $685, and to Matthew Duff in the sum of $1650. On that day Duff & Ivers confessed a judgment in favor of these three creditors for the aggregate amount of their debts. On the 20th of November, 1846, Benjamin Stephens also recovered a judgment against Duff & Ivers for $265,54, and on the 6th of January, 1847, Alfred G. Ivers, administrator of Beach Ivers, deceased, recovered against the same defendants a judgment for $10,109,38. Each of these judgments was docketed in the city of New-York, and became a lien upon the defendant's real estate in that city. Subsequent to the recovery of these judgments, certain real estate of the defendant James Duff in the city of New-York was sold upon a decree of foreclosure in this cause; and the surplus moneys arising from the sale having been paid into court, the usual order of reference in such cases was made on the 4th of March, 1847. Upon the hearing before the master it was conceded

Slosson v. Duff.

that the small judgment in favor of Stephens was entitled to be first paid out of the moneys in court; and the same has, by consent of parties, been since paid accordingly. The claim of the plaintiffs in the second judgment was resisted by the plaintiff in the third judgment, on the ground that the debt in favor of Burtus, included in that judgment, was for an usurious loan to the defendants, and that the whole judgment was therefore void. The master so decided, and he accordingly reported that the plaintiff in the third judgment was entitled to the surplus moneys remaining after payment of the amount due upon the first judgment. To this report the plaintiffs in the second judgment excepted.

*C. O'Conor*, for the plaintiffs in the second judgment.

*J. L. Mason*, for the plaintiff in the third judgment.

HARRIS, J. It was settled in the case of *Post* v. *The Bank of Utica*, (7 *Hill*, 391,) that a creditor having a junior lien upon real estate cannot maintain a bill to set aside a prior incumbrance alleged to be void for usury, without paying, or offering to pay, the amount actually due upon the prior lien. I think the same principle is applicable in the present case; and that the plaintiff in the junior judgment is not in a position to set up the defence of usury against the claim of the plaintiffs in the prior judgment to the surplus moneys arising from the sale of premises upon which both judgments were a lien. But in the view I have taken of the case it is unnecessary to decide the question; for I think the allegation of usury in the loan from Burtus to Duff & Ivers, included in the prior judgment, is not sustained. The only evidence relied upon for this purpose is in the examination of Burtus himself before the master. From his testimony it appears that he kept an exchange office, and was in the habit of lending uncurrent money, to be paid in current funds; that from time to time he had loaned to Duff & Ivers uncurrent money; and the condition of the loans was generally that they should be repaid in current money, in a

Slosson *v.* Duff.

week; that the discount upon the money thus loaned would not average over three-fourths of one per cent, and that it would pass current in the market, in the way of trade.

I do not think these facts furnish sufficient evidence to justify the court in attaching to the transaction the taint of usury. There certainly is nothing upon the face of the transaction that imports usury, nor do I think the evidence warrants the conclusion that there was any corrupt agreement or device to receive, or take, more than the legal rate of interest. There is nothing in the case to show that the uncurrent money received by Duff & Ivers was not the bills of solvent specie-paying banks. Indeed the small discount at which these bills might be converted into specie furnishes satisfactory evidence that the bills were such as would be promptly redeemed, when presented at the counter of the banks by which they were issued. Such bills, it is well known, are, for all the ordinary purposes of money, equivalent to the same amount of specie. And unless there is something in the transaction from which it is to be inferred, as a matter of fact, that the transaction was a mere contrivance to obtain more than the legal rate of interest, by loaning bills which were not intrinsically worth their nominal amount, the statute has not been violated. In the case of *Cleveland* v. *Loder*, (7 *Paige*, 557,) relied upon by the counsel for the junior judgment creditor as an authority to show the transaction between Burtus and Duff & Ivers to be usurious, the chancellor lays down the rule as follows: "If it was a part of the agreement for the loan that the complainant should take uncurrent bills at a higher rate than their actual value, *and for more than they were worth to either party in cash or current funds, the loan was usurious.*" Although it may be that the bills which Duff & Ivers received upon this loan were not receivable by the banks in the city of New-York at par, and could only be converted into gold and silver by presenting them at the counter of the banks issuing them, yet it does not appear, that they were not worth, to *both parties*, the amount at which they were received by Duff & Ivers. Applying the rule laid down

Slosson v. Duff.

by the chancellor in the case referred to, the transaction ought not to be held usurious.

In the case of *Stewart* v. *The Mechanics' and Farmers' Bank*, (19 *John.* 496,) the loan consisted of $1500 current money, and $5000 in the bills of the Niagara Bank, which had then suspended payment. Stewart had previously applied to the same bank for a loan upon the ordinary terms, and finding he could not obtain such a loan, he proposed to receive the Niagara Bank bills; and assigned as a reason, that he owed the Niagara Bank $1000, which he could pay in the bills of that bank, and the residue he could disburse in the vicinity of Buffalo in the purchase of provisions, fuel, and other articles for his steamboat. It was shown that at Buffalo, where the bank was located, the bills were generally taken by merchants, for goods, at par, and some received them in payment of debts. These facts were deemed material in determining the question whether the loan was contrary to the statute; whether, under the device of lending part in their own bills and part in the bills of the Bank of Niagara, the bank making the loan had not *intentionally* and knowingly taken more than the legal rate of interest. " I say *knowingly* and *intentionally*," said Chief Justice Spencer, in delivering the opinion of the court of errors in that case, "*for it cannot be pretended that unless the bank knew that the bills of the Niagara Bank were depreciated and not intrinsically worth their nominal amount, and intentionally put them off at their nominal value, with such knowledge, it would be a case of usury.*" See also the Bank of the U. S. v. *Waggoner*, (9 *Peters*, 378.)

I think the transaction under consideration may fairly be regarded as a mere exchange of credits. Burtus held the notes of certain banks which to him were of par value, because payment could have been enforced, and which to Duff & Ivers were equal in value to gold and silver, because they would pass current in the payment of their debts. The exchange was a mutual accommodation to both parties. The effect of it was to give to Duff & Ivers the immediate use of what was equivalent in value to specie, with a saving of one week's interest,

while Burtus, by means of the transaction, would be enabled to obtain current funds for his bank bills with less inconvenience, and perhaps with less expense, than by presenting them for redemption to the banks by which they were issued. There was no disguise in the transaction. It was in fact what it purported to be, a mere exchange of bank bills, held by one of the parties, whose marketable value was a little less than par, for the check of the other party payable at a future day—an exchange in which both parties supposed they had obtained an equivalent value. I can see no ground upon which a legal objection to the transaction can be founded.

The exceptions to the master's report are therefore allowed, and an order must be entered, directing the application of the surplus moneys to the payment of the judgment in favor of Burtus, Morris and Duff.

