JAMES S. THOMAS, Appellant, *v.* THOMAS MURRAY and others, Respondents.

Where the transfer of a chose in action is coupled with a loan of money, though the security prove uncollectible, the transaction is not necessarily usurious.

In such a case, the *onus* is upon the party alleging usury, to show that the lender, at the time of the transfer, knew or had reason to believe that the security was uncollectible.

The fraudulent omission in the transfer, of words essential to charge the party making it, as guarantor of the security, would be cause for rescinding the agreement or reforming the guaranty, but would not render usurious a contract otherwise valid, in the absence of a usurious intent.

THE action was on a note of Murray & Mattimore for $356.97, made on the 16th of September, 1857, and payable two months from date.

The defense was usury. The cause was tried before Judge JOHNSON at the Steuben Circuit, and the jury found a verdict for the plaintiffs. No motion was made for a new trial on the facts; but the judgment was reversed on appeal for supposed errors in the charge and refusals to charge.

The facts rested mainly on the conflicting testimony of Murray, the maker of the note, and J. M. Wood, the party to whom it was negotiated.

Murray's version of the matter was this: In the early part of September, 1851, he applied to Wood, a broker and banker in Corning, to lend him $200. Wood replied that he had a note against F. L. Morrow for $150, payable in lumber, and added, "you are street commissioner, and you can use it on your sidewalks." He offered to lend the $200 if Murray & Mattimore would take Morrow's note and give their own for the amount of both. Murray said he did not want the Morrow note, and did not consider it good. Afterwards Murray went to his office and told him if he would guaranty the Morrow note and lend him the $200, he would take the note. Wood said he would guaranty it; paid him the $200, wrote the guaranty, and delivered it. The note and indorsements are as follows:

"$150. Between now and the first of October next, for value received in a span of horses and harness, &c., I promise to pay F. N. Chaphe one hundred and fifty dollars' worth of good hemlock lumber in plank, &c., to be delivered at Corning at seven dollars per thousand.

Dated May 20, 1857. F. W. MORROW.

(Indorsed.) F. N. CHAPHE.

(Indorsed.) I hereby guaranty the collection of the within note. . J. M. WOOD."

Murray testified that the percentage for the use of the money was deducted, and that the amount was one per cent per month, and one-half per cent for exchange, which were embraced in the note in suit.

He testified that Chaphe, the indorser, "was considered good at that time," although he became insolvent that fall. He proved by other witnesses that Morrow was, and for a long time had been, irresponsible, and that when he afterwards sued Morrow on the lumber note, the execution was returned unsatisfied. It did not appear that either of the indorsers on that note were sued.

Wood's version of the matter was, that he had been negotiating with Murray for some time to take the Morrow note, and that before the loan was applied for, Murray had agreed to buy it, and to give for it the note of Murray & Mattimore on time. He testified that afterwards Murray came to him and desired him to allow $200 (of the amount of a note Wood had before got discounted for him at the Central Bank) to run two months longer. Wood consented to advance the $200. He made a statement of the amount, which embraced the interest, protest and exchange actually paid by Wood on the discounted paper; and took the note of Murray & Mattimore for the precise amount of the money loaned, the lumber note and these disbursements, making the proper computation and rebate of interest; that his statement was examined by Murray, and it was all right, except that he computed interest, as it turned out, on the Morrow note s well as the $200 from the date of the loan, and, so far as appears, omitted the rebate of interest for fifteen days that the lumber note had yet to run.

No question, however, was raised on this point at the trial. He utterly denied the statement of Murray as to a percentage, and testified that no money at all was paid at the time of the arrangement, and that the whole matter was adjusted as stated by him in detail. Wood also testified that he bought the lumber note from Chaphe, the indorser, and that he always supposed Morrow, the maker, to be good, and never heard an intimation to the contrary, until Murray informed him the following spring, that he could not collect his judgment against him.

Wood was corroborated by Howard in several particulars, as to which his testimony was at variance with that of Murray.

The court charged the jury that if they should find from the evidence that the note in question included interest at the rate of one per cent per month, or that it was made upon an agreement to pay that rate of interest, or any rate of interest greater than seven per cent, such note would be usurious and the plaintiff could not recover.

The court further instructed the jury that the sale of the Morrow note to the defendant at the time of making the loan would not render the transaction usurious, if Wood, who sold the note to the defendant at the time of the sale, supposed and believed that it was a good note, and that the parties to it were able to pay, and the bargain between them for the sale and purchase of such note was a genuine bargain for the sale of the note only, and without any intent to evade the statute of usury, although the note turned out to be worthless and the purchase was part of the transaction and a condition of the loan.

To this part of the charge the defendant's counsel excepted.

The court further charged the jury that if the said Wood, at the time of the agreement to sell the note and make the loan, and at the consummation thereof, believed the note good for the amount, and the parties to it able to pay, and promised to guaranty the collection thereof, the fact that he indorsed a void guaranty upon such note would not, of itself, render the transaction usurious, even if Wood knew at the

time that the guaranty was not binding upon him. That the promise to guaranty was a promise to give a valid guaranty, but the indorsement of an insufficient guaranty, intending to evade the effect of such promise, would not render the transaction usurious, if there was no intention to evade the statute of usury coupled with it.

To this part of the charge the defendant also excepted.

The defendant's counsel then requested the court to charge the jury that if they find that the defendant made application to the said Wood for the loan of $200, and that said Wood exacted and imposed, as a condition of the loan, that the defendant should purchase the Morrow note of $150 and give the note in question, and that the defendant, in compliance with such exaction and condition, took the note and accepted the loan and gave therefor the note in question, that alone would render the transaction usurious, unless the plaintiff should show that the $150 note was, in reality, worth at the time the amount for which it was given.

The court refused so to charge, and the defendant's counsel excepted.

The defendant's counsel also requested the court to charge the jury that if they found, as stated in the foregoing proposition, and in addition thereto that the said note was worthless, the transaction was usurious, although the said Wood at the time had no knowledge that the note was worthless, but supposed it perfectly good for the amount. The court refused so to charge, and the defendant's counsel excepted.

The jury found a verdict for the plaintiff for $414.09, being the amount of note and interest.

The appeal is from the judgment of reversal at the General Term.

*George T. Spencer*, for the appellant.

*George B. Bradley*, for the respondents.

PORTER, J. The borrower and the lender were both sworn on the trial. Their versions of the transaction were widely different. If that of the borrower was entitled to credit, it was a plain case of usury. If that of the lender be accepted

as the truth, the jury were authorized to find, as they did, that there was no usurious agreement or intent. As no motion was made for a new trial upon the facts, the appellant cannot claim that the verdict, in which to this extent he acquiesced, was not fully warranted by the evidence. He is entitled to be relieved from it only for error of law.

The only legal questions in the case arise on the defendant's exceptions to the instructions of the judge to the jury, and to his refusal to instruct them as requested. These will be briefly considered in their order.

It was claimed that if at the time of the loan, Morrow & Chaphe, the parties to the lumber note, were insolvent, this rendered the transaction usurious *per se*, whether the fact of their insolvency was known or unknown to the lender. The case really presented no such question. Morrow, it is true, was then insolvent; though Wood was not aware of it, and never heard such an intimation until more than six months after he sold the note. As the note was not negotiable, Chaphe, though in form an indorser, was liable in fact as a maker, under the rule settled by this court in the case of *Richards* v. *Warring*, decided at the last December term. It appears that he had been previously good, and that he ceased to be so in the fall of 1857; but it did not appear that he was insolvent when the note was transferred by him to the defendant. But if the question could be considered as fairly raised by evidence, there was no error in the charge on this subject. The judge instructed the jury, in substance, that though the transfer was coupled with the loan, and though the note finally proved uncollectible, by reason of the insolvency of the maker and indorser, this would not render the loan usurious, if Wood at the time believed the parties to be perfectly solvent, and if the transfer was made in entire good faith and without any usurious intent. This was a correct and accurate statement of the law applicable to the facts. (*Stuart* v. *Mechanics' and Farmers' Bank*, 19 Johns., 508, 510, 511; *Nourse* v. *Prime*, 7 Johns. Ch. 69, 77; *Aldrich* v. *Reynolds*, Barb. Ch., 43; *Sizer* v. *Miller*, 1 Hill, 226.)

In the case of *Stuart* v. *The Mechanics' and Farmers' Bank*, the decision mainly turned on the precise question now under consideration. The suit was brought to foreclose a mortgage. The defense was, that it was executed to secure among other things a usurious loan of $6,500. The alleged usury consisted in a stipulation that the borrower should receive $5,000 of the amount in bills of the bank of Niagara. That bank had suspended specie payments more than a month before the loan. Its bills were greatly depreciated, and were commonly refused on any terms for business purposes. These bills had been turned out by that bank, with other collaterals, to secure its own indebtedness to the Mechanics' and Farmers' Bank. The officers of the latter, at the time the bills were sent to Stuart, still hoped that the Niagara bank might retrieve its affairs. Soon after the loan, it proved to be insolvent. The chancellor held, that though there was a stipulation that the borrower should receive the money in these bills, and though they proved in the end to be worthless, the burden was upon the borrower to show that the lender knew this at the time of the loan; and as he had not established this, the transaction could not be regarded as a device to cover a usurious exaction. His decision was unanimously affirmed by the Court of Errors; Chief Justice SPENCER, who delivered the opinion, said: "The question is, whether this was a loan of money, contrary to the statute; whether the respondents, under the device of lending part in the bills of their own bank, and part in the bills of the Bank of Niagara, have, in effect, intentionally and knowingly taken more than at the rate of six per cent interest for the loan and forbearance of money. I say *knowingly and intentionally*, for it cannot be pretended that unless the respondents knew that the bills of the Niagara bank were depreciated, and not intrinsically worth their nominal amount, and intentionally put them off at their nominal value *with such knowledge*, it would be a case of usury." After reviewing the evidence, he added: "I cannot find in this case evidence warranting the court in saying, that the respondents knew, or had reason to believe, when this loan was effected, that

the Bank of Niagara was insolvent, because it had refused to redeem its bills in the winter preceding, or because their negotiation for a loan had failed." (19 Johns., 508, 511.) The other authorities cited, illustrate the uniformity with which this rule has been applied in cases of alleged usurious exaction.

The other instruction to the jury, of which the defendants complain, had relation to the fact proved by Murray, that when the arrangement for the loan and transfer was made, Wood promised to guaranty the Mallory note, and that he indorsed a guaranty which failed to state a consideration. It is erroneously assumed that Wood could not be compelled to correct the guaranty and make the promise good. As this was not a negotiable note, in the commercial sense, it may well be doubted, whether Wood could not be charged as maker, within the rule settled in the case above referred to of *Richards* v. *Warring.* But in any view of the matter, it is quite clear that he could be compelled to reform the guaranty in conformity with the agreement, whether the omission to acknowledge a consideration was inadvertent or fraudulent. If the defendant's remedy has been exhausted against Chaphe as well as Morrow, the guaranty of Wood can be reformed and enforced in the same action. (*Bidwell* v. *Astor Insurance Co.*, 16 N. Y., 263; *Malleable Iron Works* v. *Phœnix Insurance Co.*, 25 Conn., 465; *Collett* v. *Morrison*, 12 Eng. Law & Eq., 171.) As the guaranty was of the *collection* of the demand, Wood will of course be chargeable with the costs of the proceedings against the other parties to the note, as well as of those taken against himself, if he refuses to conform the writing to the agreement sworn to by Murray and not denied by him. Indeed, the intention to guaranty the collection of the note is so obvious from all the circumstances, that a denial of it, under the pretense that he intended to commit a fraud, would be unavailing before any intelligent tribunal. The hypothesis on which the instruction was given, was that the defendants were without recourse against Wood. As this is not well founded, the proposition would have been harmless, even if it had been wrong; but it was clearly right.

The substance of the charge was, that the fraudulent omission of an acknowledgement of consideration, though it might have been cause for rescission, would not render usurious a contract otherwise valid, when there was no usurious intent.

The judge was requested in substance to instruct the jury, that if the loan by Wood was coupled with the condition that Murray should purchase the Morrow note, the *onus* was upon the plaintiff to show that the note was in fact worth the amount for which it was given; or, in other words, that the parties to that paper were solvent. There is a report of an English case at *nisi prius*, in which the burden of disproving the very fact, from which alone the usurious intent could be inferred, was cast upon the party denying it. (*Davis* v. *Hardacre*, 2 Campb., 375.) That decision has not been accepted as authority. Since the case of *Stuart* v. *The Mechanics' & Farmers' Bank*, it has been held in this State, as the settled rule of law, that the *onus* is upon the party alleging this defense, not merely to establish a usurious intent, but to prove the facts from which that intent is to be deduced. (19 Johns., 505, 506; 4 Seld., 276; 22 N. Y., 472.)

The judge also declined to charge, that if the purchase of the Morrow note was a condition of the loan, the transaction was usurious, even though Wood at the time supposed that security to be perfectly good. The authorities already cited show that the request was properly refused.

The foregoing are the only questions of law properly before us for consideration. We have not, however, overlooked the claim of the defendant's counsel, that the transaction was necessarily usurious, as it appears that the loan and transfer occurred on the 16th of September, and that in making up the account at the time, interest was computed on the Morrow note from that date, although it did not become due until fifteen days later. This was an error of eighty cents. The amount was so trivial as to warrant the application of the maxim, *de minimis non curat lex*. It obviously arose from mere inadvertence in making the computation, and it seems to have been so understood by the defendants, as they raised no question of law in regard to it, and made no allusion to

the fact in the propositions which they requested the judge to submit to the jury. It furnishes no ground for reversing the original judgment. (8 Wend., 533 ; 1 Seld., 492 ; 4 Seld., 276 ; 2 Kern., 223 ; 22 N. Y., 425.)

The decision at the General Term should be reversed, and the judgment on the verdict should be affirmed.

CAMPBELL, J.   This action was brought to recover the amount of a promissory note, made for $356.97, made by the defendants Murray & Mattimore, and indorsed by the other defendants, dated Sept. 16, 1857, and payable two months after date. The defense is usury. The note in suit was as follows:

"$356.97.                              CORNING, Sept. 16, 1857.

Two months after date, we promise to pay to the order of Chas. W. Howard, Esq., three hundred and fifty-six dollars and ninety-seven hundredths, at Atlantic Bank, New York.   Value received.            .        MURRAY & MATTIMORE.
(Indorsed.)   CHAS W. HOWARD.
            J. M. WOOD."

The note was given to Wood, who transferred it to the plaintiff. The consideration paid by Wood at the time the note was made and delivered to him, was in money, two hundred dollars, and the delivery to Murray & Lattimore of an instrument, with its indorsement as follows:

"$150.   Between now and the first of October next, for value received in a span of horses and harness, &c., I promise to pay F. N. Chaphe, one hundred and fifty dollars' worth of good hemlock lumber, in plank, &c., to be delivered at Corning, at seven dollars per thousand.   Dated May 20, 1857.
                                    F. W. MORROW.
(Indorsed.)   F. N. CHAPHE.
(Indorsed.)   I hereby guarantee the collection of the within note.                              J. M. WOOD."

On the trial of the cause, evidence was given on the part of the defense, that Murray, one of the makers of the note, applied to Wood for the loan of two hundred dollars, which

Wood offered to make, provided Murray would take the Morrow note or contract, and give the amount in suit, enhancing the amount loaned, and the amount of said Morrow contract. That Murray at first declined, saying that he did not want the Morrow note, and did not consider it good, but that afterwards, and at a subsequent day, he concluded to take it, and gave the note in suit. That he told Wood if he would let him have the $200 that day, he would take the Morrow note, provided Wood would guaranty it; that Wood said he would guaranty it, and accordingly wrote the guaranty on the Morrow note, and the money was paid over and the Morrow note or contract delivered, and the note in suit was executed and delivered to Wood. Evidence was given by defendants, tending to show that Morrow was insolvent, and had been for years. No evidence was given as to the value of hemlock lumber, at the time of making the note in suit.

The plaintiff gave evidence tending to show that Wood did not know of Morrow's insolvency — that Morrow had been doing business — butchering — keeping a butcher's shop — buying and selling cattle and sheep apparently on his own account — and further, that Wood first applied to Murray, asking him to purchase the Morrow contract, and saying, that as he was street commissioner, he could use the hemlock plank on the sidewalks; that he offered to sell it and take Murray's note on time and payment. That at a subsequent time Murray offered to take it, provided Wood would guaranty it, and also loan him $200. This, as before stated, was done. The judge charged the jury, that if Wood supposed the note to be good at the time, and if the bargain was genuine and without intent to evade the statute against usury, that transaction was not usurious, even though the note turned out to be worthless.

And also that if Wood believed the note to be good, and agreed to guaranty it, a void guaranty, though known to Wood to be void, would not render the transaction usurious, and that the indorsement of an insufficient guaranty, intending thereby to evade the effect of a promise to give a valid

one, would not render the transaction usurious if there was no intention to evade the statute of usury coupled with it. The counsel for the defendants requested the judge to charge, that if Wood exacted as a condition of making the loan of $200, that Murray should purchase the Morrow note and give the note in question, and it was done accordingly, that then the transaction was usurious unless the plaintiff should show that the Morrow note was worth the amount for which it was given. This request was refused. He was further requested to charge, that if the jury found the Morrow note was worthless, the transaction was usurious, even though Wood supposed it to be perfectly good at the time. This was also refused, and the jury found a verdict for the plaintiff, and the judgment was reversed at a General Term in the seventh district, and a new trial ordered, and appeal to this court by the plaintiff.

I am entirely unable to see why the guaranty of Wood on the back of the Morrow note or contract is not binding and valid, even though no consideration is expressed. The statute of frauds does not apply to the case. It falls clearly within the decision of *Brown* v. *Curtis* (2 Comst., 225), and also in *Dresser* v. *Snow* (20 N. Y., 331). In the former case Judge BRONSON said: "He does not undertake as a mere surety for the maker, but on his own account and for a consideration which has its root in a transaction entirely distinct from the liability of the maker." And in *Dresser* v. *Snow*, Judge SELDEN said, in commenting on several cases: "The case of *Brown* v. *Curtis* was put on the ground, not that the statute had been complied with, but that the contract did not come within the provisions of the statute, and need not have been in writing at all." In the case before us there was full consideration given to the guarantor in a transaction with which the maker had no concern. If, then, the guaranty of Wood was valid and legally binding on him, and as no question is made as to his entire responsibility at the time, it becomes immaterial, so far as the question of usury arises, whether Morrow was insolvent or not. The contract of Morrow, guaranteed by Wood, was not

worthless, but was a valuable contract in the hands of Murray. We are brought, then, directly to the question of construction of the Morrow contract. In *Clark* v. *Pinney*, in a similar contract (7 Cow., 681), the Supreme Court held that where there is a default in the vendor to deliver, the vendee to pay on delivery, the measure of damages is the difference between the contract price and the value on the day when the chattels shall be delivered; and when the vendee has paid in advance, he may recover the highest price between the time of delivery and the day of trial. In *Pinney* v. *Gleason* (5 Wend., 393), it was held, in case of a similar note or contract, that the measure of damages was the sum specified in the note. This latter case was decided in the Court for the Correction of Errors, and of course after *Clark* v. *Pinney*, in 7 Cowen. There is an inability on my part to see the force or propriety of holding that where a person has put his property at a fixed price into the hands of another party or purchaser, or has advanced a fixed sum of money to such other party, to be paid in chattels at a fixed price, that the party thus contracting may discharge his contract by the payment back of the exact sum and interest. In other words, if the market price of the chattels is above the agreed price, the debtor may discharge his obligation by the payment of the money advanced, and if below the market price, then he may discharge his obligation by a delivery of the chattels. I think the decision in the Supreme Court more in accordance with sound rules of commercial dealings, and ought to be followed; but if not, then I think there is a distinction which may fairly be taken in the case. In the case of *Pinney* v. *Gleason*, there was a promise to pay "seventy-nine dollars and fifty cents on the first day of August, 1822, *in salt, at fourteen shillings per barrel.*" In this case before us, Morrow agreed to pay "one hundred and fifty dollars *worth* of good hemlock lumber, in plank, to be delivered at Corning at seven dollars per thousand." He did not promise to pay a certain sum of money *in* lumber, but he promised to pay so much money's worth of lumber at a fixed price per thousand. In other words, he promised to pay lumber, and he certainly

could not, I think, discharge himself by the payment of the
expressed sum of money.

The proper construction of Morrow's contract becomes
important only as affecting the value of that contract suppos-
ing it had been carried out by Morrow, or by Wood as his
guarantor.   For aught that appears the lumber was worth, at
the time and on the last day fixed for its delivery, a much
larger sum than seven dollars per thousand; and if the meas
ure of damages, as a failure to deliver, would be the value of
the lumber at such time, then surely usury could not be pre-
dicated on the sale of such a contract, when the seller might
lose and the purchaser might gain by the transaction.   So far
as the evidence goes, it tends to show that all parties treated
the contract as a lumber contract, and not one for the pay-
ment of money.   Murray was approached as purchaser, as he
was street commissioner, and might require for sidewalks the
exact article, hemlock plank.   But again, this contract seems
to have contemplated the delivery of the lumber not in bulk,
but from time to time.   The promise was to deliver "between
now (20th May, 1857) and the first of October next."  If the
transfer was made to Murray on the day of the date of this
note (16th September, 1857), it would be a few days before
the last day fixed for delivery, the first of October.   Still,
supposing the contract to have been made in good faith by
Morrow, it may have been contemplated that the lumber
would be delivered, in whole or in part, before the first of
October.

There is not the slightest evidence in the case to show that
Wood did not promise to guaranty, and did not, in fact, sup-
pose that he was making a valid and binding guaranty of the
Morrow contract.   He testified that he supposed at the time
that Morrow was solvent and responsible.   That he afterwards
refused to take back the Morrow note, does not affect the
original transaction, as he may have been advised that the
guaranty was not binding in law on him.   But if Wood was
legally bound as guarantor on the Morrow contract, that con-
tract being treated by the parties as one for the delivery of
the lumber therein called for, and delivered that over, togeth-

er with the two hundred dollars in money, I cannot see how usury could possibly grow out of the transaction. Even conceding that the measure of damages was only the face of the contract, $150, and that Morrow was not bound to deliver the lumber before the last day of September, and the interest was lost on $150 from 16th September to 1st October in excess, yet the amount would be but a few cents, and may well be charged to mistake and oversight, and the maxim *de minimis lex non curat* may be applied.

Upon the conceded facts in this case, and upon the defendant's own evidence, the plaintiff was entitled to a verdict, and the judgment of the General Term reversing that of Special Term should be reversed, and the judgment on the verdict should be affirmed.

Judgment of the General Term reversed, and judgment on the verdict affirmed.