CHARLES MATTHEWS, Appellant, *v.* CHARLES A. COE, Respondent.

A contract between a commission merchant and a dealer in produce, by which the former agrees to advance money at the legal rate of interest to enable the dealer to purchase or carry his produce, and is also to receive a percentage upon the money advanced as a commission for the care, management and sale of the property, is not *per se* usurious; the *onus* is upon the party seeking to impeach the transaction to show a guilty intent and that the contract was a cover for usury.

Where, therefore, it does not appear that the commission charged was unusual, or unreasonable, or in any way that the lender took advantage of the necessities of the borrower, a finding of a referee that such a contract is usurious, is unsupported by the evidence and is a legal error.

The fact that the borrower in fact takes charge of and manages the produce purchased by him, does not affect the nature of the contract.

(Argued June 11, 1877; decided June 22, 1877.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, setting aside a verdict in favor of plaintiff and granting a new trial.

This action was brought to recover for the alleged conversion of a quantity of corn or the warehouse receipts therefor, held by defendant as collateral security for advances made thereon, under a contract alleged to be void for usury.

It is reported upon a former appeal, in 49 N. Y., 57.

By the terms of the contract upon which the advances were made, the corn was to be held in store until the market price should advance to the sum of one dollar per bushel, which it was expected it would do within the succeeding sixty days. The defendant was to receive interest upon the moneys advanced at the rate of seven per cent., and in addition to that the further sum of two and one-half per cent. by way of commissions. The market price of corn did not advance as it was expected to do within the sixty days, and the agreement was further extended on the same terms.

The referee found the usury as alleged, and gave judgment for plaintiff. The evidence upon which the finding was based is set forth substantially in the opinion.

*Samuel Hand* for the appellant. The transactions out of which this action arose were usurious. (*Tyng* v. *Com. Warehouse Co.*, 58 N. Y., 308; *Cockle* v. *Flack*, 93 U. S. S. C., 344; *Bk. of U. S.* v. *Owens*, 2 Pit., 538; Chitty on Con., 603, 611a; *Dry Dock Bk.* v. *Am. L. Ins. Co.*, 3 N. Y., 344, 359; *Bk. of Salina* v. *Alvord*, 31 id., 473; *Southworth* v. *Bennett*, 58 id., 659; *Elwell* v. *Chamberlain*, 31 id., 611; *Fuller* v. *Darrin*, 50 id., 437; *Birdsall* v. *Patterson*, 51 id., 43; *Mer. Ex. Bk.* v. *Com. Warehouse Co.*, 49 id., 635; *Steel* v. *Whipple*, 21 Wend., 104; 1 Story's Eq. § 301; *Dunham* v. *Gould*, 16 J. R., 367; *Dunham* v. *Dey*, 5 J. Ch., 142; *Trotter* v. *Curtis*, 19 J. R., 160; *Schroeppel* v. *Corning*, 5 Den., 236; 6 N. Y., 107; *Seymour* v. *Marvin*, 11 Barb., 80.) The agreement being void for usury, the possession of the property pledged was tortious and the defendant was answerable at once for the conversion. (5 Den., 236; 6 N. Y., 107; *Nelson* v. *Little*, 2 id., 443; *Wheeler* v. *Newbold*, 16 id., 392; *Markham* v. *Jaudon*, 11 id., 235; *Dykers* v.

*Alstyne*, 7 Hill, 498; *Stevens* v. *Marsh*, 4 Den., 231.)
Plaintiff as purchaser could allege the invalidity of defendant's claim to the property on the ground of usury. (*Bullard* v. *Raynor*, 30 N. Y., 197, 200; *Mason* v. *Lord*, 40 id., 476; *Berdon* v. *Sedgwick*, 44 id., 626, 632; *Thompson* v. *Van Vechten*, 27 id., 568; *Berdon* v. *Sedgwick*, 44 id., 626; *Mer. Ex. Bk.* v. *Com. Warehouse Co.*, 49 id., 642.) The cause of action was assignable. (*McKee* v. *Judd*, 12 N. Y., 622; *Meech* v. *Stover*, 19 id., 26; 30 id., 200; *Smith* v. *N. H. R. R. Co.*, 28 Barb., 607.)

*Amasa J. Parker* for the respondent. The *onus* of proving usurious intent was upon the plaintiff. (*Valentine* v. *Connor*, 40 N. Y., 248; *Bullock* v. *Boyd*, Hoff., 294; *Thomas* v. *Murry*, 32 N. Y., 605, 612; *Smith* v. *Marvin*, 27 id., 137; *Thurston* v. *Cornell*, 38 id., 281; *Condit* v. *Baldwin*, 21 id., 221; *Trotter* v. *Curtis*, 19 J. R., 160; *Nourse* v. *Prime*, 7 J. Ch., 69; *Booth* v. *Sweezy*, 4 Seld. 280; *Martin* v. *Feeter*, 8 Wend., 533.) The finding of the referee that the transaction was void for usury was unsupported by the evidence, was therefore an error in law, and the judgment was properly reversed on that ground. (49 N. Y., 57; *Mason* v. *Lord*, 40 id., 476; *Wegman* v. *Childs*, 40 id., 150.)

ALLEN, J. Without criticising the form of the complaint, which but faintly if at all shadows forth the real cause of action, or the plaintiff's title to the property in controversy, the action may be disposed of upon its merits. I shall treat the action as one by the owner to recover for the conversion of property claimed and held by the defendant under a contract alleged to be void for usury, and in which, if evidence was given tending to prove the usurious character of the transaction, the plaintiff was entitled to an affirmance of the judgment for the amount awarded by the referee, within the principle decided in *Schroeppel* v. *Corning* (2 Seld., 107), and for the reason that this court cannot review the finding of

facts by the referee. The agreement between the parties was in form the usual commercial contract by which a commission merchant contracts with a dealer in produce or other merchantable commodity, for the loan or advance of his money at the legal rate of interest to enable the dealer to purchase or carry his merchandise, and also for an agreed commission to undertake the care, management and sale of the commodity. Such contracts, proper and usual in form, may be made covers for usury, and when this fact is established by competent proof, they are within the condemnation of the laws against usury, and void. The question is upon contracts for the transaction of a commission business in connection with the use of money, whether a fair, reasonable, usual and customary allowance for the trouble, and inconvenience of transacting the business only has been secured, or whether, under the guise of a commission for services, trouble and expenses, the lender has sought to, and has reserved and secured to himself compensation for the use of his money in excess of the rate of interest allowed by law. The contracts are not necessarily usurious, and the *onus* is upon the party seeking to impeach them for usury, to prove the guilty intent, and that the contract is a cover for usury and for the loan of money upon usury. (*Thomas* v. *Murray*, 32 N. Y., 605; *Booth* v. *Swezey*, 4 Seld., 280; *Smith* v. *Marvin*, 27 N. Y., 137.)

In *Trotter* v. *Curtis* (19 J. R., 160), the plaintiff's commission merchants received the produce of the defendant, a country dealer, and freighted the same to New York, and accepted his drafts under an engagement that the produce was to be in store at or before the maturity of the acceptances, and in their accounts they charged two and one-half per cent. commission on all advances made by them to meet the drafts when they were not in funds of the defendant. As no compensation for this service had been fixed by agreement, the plaintiffs gave evidence of the fairness of their charges, and upon proof that they were the fair, usual and customary allowances, it was held that the transaction was not usurious

or illegal, and the claim was sustained. *Suydam* v. *Westfall* (4 Hill, 211), was decided upon the authority of *Trotter* v. *Curtis*, but as there was an express agreement to pay two and one-half per cent. commission on all advances on acceptances, met otherwise than with produce, the plaintiffs were not called upon to prove the fairness or the reasonableness of the allowance. The agreement of the parties supplied the evidence which was necessary when the parties claimed upon a *quantum meruit*, and was sufficient until the contract was impeached. Per SELDEN, J., in *Smith* v. *Marvin* (*supra*), who says that when it is expressly agreed that the plaintiff should be entitled to two and one-half per centum commission on advances, proof on the part of the plaintiff of the reasonableness or customary nature of the charges was wholly unnecessary. (See also, *Nourse* v. *Prime*, 7 J. C. R., 69.)

There is no presumption of an illegal or usurious intent in the agreement itself, and it was for the plaintiff, seeking to overthrow it for usury, to prove the fact alleged, or give evidence authorizing an inference of the usurious intent. If the case is barren of evidence of this character, and there was no evidence to support the finding of the referee, an exception to the report presents a question of law, reviewable upon this appeal. This has been said so repeatedly by this court, that it has become trite. (*Wegman* v. *Childs*, 41 N. Y., 159; *This case*, 49 N. Y., 57.)

There was no attempt by the plaintiff to prove that the borrower was in a straight for money, or that the defendant took advantage of his necessities; that the commission agreed upon was unusual or unreasonable, or that it was not the customary allowance for the service undertaken by the defendant. A single witness only was examined in behalf of the plaintiff upon this point, and he said that the commission was different among different merchants; that where a man advances, he charges more than where he does not advance; that the majority charged two and two and one-half per centum when they furnished an advance, all but a margin;

some will carry corn at that rate for almost an indefinite time, say six months; but some will only carry it for sixty days at that rate, and always charge interest on advances.

The witness stated that he charged as a commission one and one-half per centum for buying, selling and carrying, in addition to interest for sixty days, and that the two and one-half per cent. commission included buying, selling and advances. He also stated that there was no uniform recognized rule among commission merchants as to their charges when money is advanced, or as to the length of time they will hold produce; that it depends on the circumstances, relations and obligations of the parties, and according to the times; that the general rule is, that when they have made one commission, they require another at the end of sixty or ninety days.

This evidence came far short of proving that this transaction was a cover for usury, or that the commission was fixed with the intent of securing compensation for the loan of money in excess of the rate allowed by law. A verdict of a jury, or a report of a referee, based upon this evidence alone, that a contract for the transaction of a regular and usual commission business, for a commission not in excess of that charged and received by a majority of commission merchants, was but a device and scheme to evade the laws against usury, would be wholly unsupported by evidence.

There is nothing in the evidence to cast a suspicion upon the transaction, or tending to prove that the charge was not, in the language of Ch. J. SPENCER, in *Trotter* v. *Curtis*, " a fair, usual and customary allowance for the trouble and inconvenience in transacting the business."

The evidence is, that the borrower was buying large quantities of corn in the hope and with the expectation of controlling the market, and had a like contract and upon the same terms, with another commission house to carry a large quantity of corn, and hence he made arrangements for withholding the corn from the market until it should bear a price fixed by himself. This added to the risk, trouble and

expenses of the defendant, and doubtless affected the rate of the commission. A certificate of some twenty-five of the leading produce commission firms in New York city was accepted as evidence of the custom of commission merchants in carrying corn for others, to charge interest for the time held, and a commission agreed on for cash advances, and also all charges for storage, labor, insurance, etc., and that at the expiration of the thirty, sixty ninety, or any other number of days, the corn is carried by agreement, it would be subjected to the same charges, and there was no attempt to prove by them, or by any one, that two and one-half per centum was an unusual or unreasonable charge for the service agreed to be rendered by the defendant.

*Cockle* v. *Flack* (93 U. S. R., 344), brought before the court at Washington, a contract very like the one involved in this action., What extrinsic evidence or whether any was given to impeach the fairness of the agreement, does not appear. The borrower, who was the plaintiff in error, urged that the contract was necessarily upon its face usurious, and alleged for error that the judge at circuit submitted the question to the jury. The court held that it was not error to submit the question to the jury, and that the contract was not *per se* and of necessity usurious. The jury found that it was not usurious in fact. It is said by the court that the question was properly submitted to the jury. But it does not follow that every contract, usual and customary in its terms, is in all cases to be submitted to a jury with liberty to find it usurious and void upon mere conjecture or caprice, and without evidence to impeach it, merely because the contract may be made a cover for usury, and under some circumstances may be invalid for that reason. Judge MILLER, speaking for the court, says, that "the defendants were engaged in a business in which both custom and sound principle authorized the joint use of their money, and their personal service increased in value by their character for integrity and experience. To both these sources they looked for their profits, and they were necessarily united." Engage-

ments of this character are among the necessities of commerce, and are not to be overthrown or annulled without some evidence that they are but the means of extortion and covers for usury, of which there is none here. Another remark of the learned judge answers another objection, that the defendant really rendered no service, and that the borrower took the charge of and managed the corn, although the legal title was in the defendant, and there was nothing in the terms of the agreement to relieve him from the duties and obligations of a factor in possession of property for sale. He says : "We see no reason why the parties could not go a step further and stipulate, that if for any reason operating in the interest of the borrower, he should prefer to become his own broker, or commission merchant, or to sell at home, he should pay the commission which the other had the right to contract for and receive." Whatever the borrower did in relation to the corn, he did voluntarily and in furtherance of his own interests, and there is no controversy or conflict as to the duties assumed by the defendant, or complaint that he omitted any duty within his obligations that was required required of him. He could not have sold for the reason that the price at no time reached the borrower's limit, but his trouble, inconvenience and risk remained, and his necessary office and business expenses which are to be paid from his commissions were continued. A case was not made by the evidence upon which any question of fact as to intent other or different from that indicated by the terms of the contract and lawful in itself, arose to be passed upon by the referee, and it was a legal error to find the illegal intent without evidence to support it. There was no question made before the referee or fact found by him upon which the question can be made here which is suggested in the brief of the counsel, that the defendant is liable for the conversion of the corn, having sold it without demand and without notice. If the plaintiff could have made a case upon this or any other ground not already considered, which was the only matter litigated before the referee, and

upon which his report and judgment were founded, he should have taken the benefit of the rule and gone back for a new trial. As he preferred to appeal, he must abide by his stipulation, and the order granting a new trial being affirmed, judgment must go against him absolutely.

All concur, except CHURCH, Ch. J., not voting.

Order affirmed, and judgment accordingly.