(165 App. Div. 815)

## SPAIN v. TALCOTT.

(Supreme Court, Appellate Division, First Department.　January 22, 1915.)

1. USURY ⬤⟿53—CONTRACT OF FACTOR.
 　　A contract whereby a factor, who advanced money to his principal, was to receive a commission for services in addition to the legal interest on the money advanced, is not in violation of the usury laws.
 　　[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 91, 114–118; Dec. Dig. ⬤⟿53.]

2. USURY ⬤⟿53—CONTRACT OF FACTOR.
 　　A factor, who advanced money for his principal and received the full legal rate of interest thereon, is not guilty of usury in receiving commissions for services rendered as provided by the contract, though he performed only some of the services required by the contract.
 　　[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 91, 114–118; Dec. Dig. ⬤⟿53.]

3. USURY ⬤⟿53—CONTRACTS.
 　　Where a factor made collections for his principal, that service warranted payment of commissions in addition to payment of the full legal interest on advances made.
 　　[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 91, 114–118; Dec. Dig. ⬤⟿53.]

4. INTEREST ⬤⟿60—COMPOUND INTEREST.
 　　Compound interest can be recovered only upon some new and independent agreement, made upon good consideration.
 　　[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 134–137; Dec. Dig. ⬤⟿60.]

5. INTEREST ⬤⟿60—COMPOUND INTEREST—ACQUIESCENCE.
 　　Where plaintiff objected to defendant's compounding of interest monthly on advances made, but did not, because it would endanger his business, break the contract, there was no acquiescence which would prevent plaintiff from thereafter recovering the illegal exactions.
 　　[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 134–137; Dec. Dig. ⬤⟿60.]

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. ACCOUNT STATED ☞6—WHAT CONSTITUTES.

Where defendant, who made advances to plaintiff, issued monthly statements, in which interest was compounded, the statements which were accepted did not become accounts stated; it appearing that because of the relations between the parties plaintiff could not repudiate the contract.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 30–39; Dec. Dig. ☞6.]

7. CUSTOMS AND USAGES ☞16—COMPOUND INTEREST.

Where defendant made advances to plaintiff, that in the trade it was customary to compound interest monthly does not warrant the charging of such interest.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 27, 28; Dec. Dig. ☞16.]

8. PAYMENT ☞82—RECOVERY OF PAYMENTS—COMPOUND INTEREST.

Defendant made advances to plaintiff, and issued monthly statements, in which interest was compounded. Plaintiff objected to the compounding of the interest. During the life of the contract defendant collected sums due plaintiff, and out of them deducted his charges. When the contract was ended, plaintiff, to save his property from lien, paid defendant over $20,000. Held, that there was no acquiescence or voluntary payment of compound interest, precluding plaintiff from recovering illegal exactions.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 254–266; Dec. Dig. ☞82.]

Dowling, J., dissenting.

Appeal from Trial Term, New York County.

Action by William J. Spain against James Talcott. From a judgment directing an accounting, defendant appeals. Modified and affirmed.

Argued before INGRAHAM, P. J., and SCOTT, CLARKE, HOTCHKISS, and DOWLING, JJ.

Arthur C. Rounds, of New York City, for appellant.

Marion Erwin, of New York City, for respondent.

SCOTT, J. This action is brought in equity for an accounting. Plaintiff is an importer of and dealer in certain classes of merchandise. Defendant describes himself in his answer as a banker and commission merchant. The relation between the parties began with a written contract, dated July 21, 1902, under which, as defendant claims, he became a factor for plaintiff, agreeing to make advances against merchandise and accounts payable, and in connection therewith to perform such services for plaintiff as are usually performed by factors. Plaintiff, on the other hand, claims that the contract was a mere cover for usury, that it was not intended that defendant should ever perform any services to said plaintiff, and that in point of fact he never did perform any services, except to advance money, and that the various things that were done to make it appear that defendant's position was in truth that of a factor were mere shams and devices. He further claims that defendant has unlawfully charged and retained out of moneys coming into his hands applicable to the payment of advances unwarrantable sums for interest.

The contract referred to was drawn by defendant, and evidently with great care, and appears upon its face to be quite innocent and lawful. By its first clause plaintiff constitutes and appoints defendant—

"as sole factor and selling agent, and hereby agrees to consign to him for sale upon commission during the continuance of this agreement the entire stock of goods now owned or held by him or hereafter owned by him and all goods which at any time during the continuance of this agreement he may purchase or manufacture."

The second clause defines the duties and obligations which defendant assumed as factor and reads as follows:

"Second. The said goods shall be consigned to James Talcott, and all sales of said consigned goods shall be made by James Talcott, and shall be invoiced to the purchaser in the name of 'James Talcott, W. J. Spain Dept.' James Talcott shall purchase books of account used in said business from time to time as they are required and shall own same. James Talcott in his discretion may employ and pay a bookkeeper, who shall keep them, or, if he prefer, a representative who shall supervise all the books of accounts used in the business of said agency. James Talcott shall supervise the credits, keep books of account, etc., at his main office at 108–110 Franklin street, New York City, furnish the necessary employés for collection of accounts, attend to said collection and the necessary details connected therewith at his own expense. W. J. Spain shall pay all other expenses which shall be incurred in the said business, and including the rent of any premises which may be selected therefor, salaries of salesmen and other employés, except as aforesaid, stationery, postage, telegrams, and all office selling, packing, cartage, storage, and incidental expenses and premiums for insurance. All insurance shall be in the name and payable to James Talcott, and James Talcott shall have the exclusive supervision and control of the said consigned goods, and shall decide all questions as to credit to be given to purchasers, and do all correspondence, books of account, remittance, check bills receivable and proceeds of sales, as well as said consigned goods shall be in the exclusive possession and control of James Talcott as factor aforesaid."

Talcott undertook to advance to plaintiff in check or acceptance 50 per cent. of the net cost of the merchandise consigned to him and 75 per cent. of the net value of outstanding accounts, the amount of advance at any time not to exceed $10,000 on merchandise consigned and $50,000 on outstanding accounts. For his "services as factor, supervisor, and selling agent," Talcott was to receive 3½ per cent. commission on the sale of consigned goods up to $200,000 and 3 per cent. upon such sales in excess of that sum. It was also provided that:

"Interest shall be charged and credited to the account current between James Talcott and W. J. Spain at the rate of six per cent. (6%) per annum."

The lease of the premises in which the business was to be conducted was to be taken in Talcott's name, or else assigned to him; plaintiff, however, paying the rent and agreeing to take a reassignment of the lease at the expiration of the contract, at which time, if any goods remained unsold, plaintiff was to pay to defendant for his services in connection therewith a commission of 2½ per cent. upon the amount of advances then due and unpaid, and in addition thereto 1 per cent. of the market value of the unsold goods. Provision was made as to the form of sign to be placed on the business premises, and it was expressly agreed that Talcott should not guarantee sales, which were to be exclusively at the risk of plaintiff. It was further agreed that plaintiff, subject to the approval of defendant, should designate the persons to be employed in and about the consigned goods and in and about the offices of the agency, meaning the premises in which the business was to be transacted, but Talcott was not to be liable for any

acts or omissions as to any of the persons so employed, although the business of the agency was to be at all times under the exclusive management and control of said defendant.

This agreement by its terms was to run to and including July 1, 1903, and to be continued after that time subject to 30 days' written notice given by either of said parties to the other. In fact it continued, subject to certain amendments made from time to time, until July 31, 1907. These amendments, four in number, related in the main to the rates of commission to be charged. One of them, however, provided that the rent of the premises in which the business was conducted should be paid by defendant, the commission to be retained by him being increased to a rate which was estimated to cover the rental, with an oral agreement, afterwards carried out, that the difference, if any, either way between the increase in the commission and the rental actually paid should be adjusted between the parties; the result being that although the rent was ostensibly paid by defendant, it was in reality paid, as theretofore, by the plaintiff.

The defendant, who appears to be largely engaged in this character of business, kept an office, with an office force and books of account, in which he kept accounts showing the amount of his advances and receipts, delivering to plaintiff monthly an account current, showing the advances and receipts for the month. He kept the account with monthly rests, charging interest on the balance of account as shown at the end of each month, thus compounding interest monthly.

The two principal contentions made by plaintiff, in addition to complaints as to certain alleged overcharges of minor importance, are: First, that the sole relation between the parties was that of borrower and lender, and that the contract between them was a mere cloak for usury; and, second, that the compounding of interest was unlawful and in direct violation of the express contract between the parties. He therefore asks, and by the judgment appealed from has been awarded, an accounting, upon which defendant will be allowed the amount actually advanced by him, with legal interest thereon, with annual rests, and be adjudged to repay to plaintiff so much as it shall appear that he unwarrantably retained.

[1] The evidence in the case is largely documentary, and, in so far as it is oral, there is little, if any, contradiction as to any basic fact, although naturally the parties seek to draw different inferences from the facts proven. The burden of proving that the real agreement between the parties was usurious rested, of course, upon the plaintiff, and he assumed it, undertaking to show, as is competent in such cases, the negotiations leading up to the making of the contract, and also what was actually done under it.

The preliminary conversations, which were testified to at length by plaintiff, and in no wise contradicted or modified by any evidence on the part of defendant, are much too long to be incorporated into an opinion. The substance of them was that plaintiff objected to the provisions in the contract purporting to give defendant general supervision and control of the business plaintiff was engaged in. In response defendant repeatedly stated that he had no intention of interfering in any way with the business. Without quoting at length from the

evidence, it may be summarized by saying that the preliminary negotiations as testified to by the plaintiff indicates that the real agreement and understanding between the parties was one for a loan of money by defendant to plaintiff, with an assignment to defendant of the goods purchased, and the proceeds of sales and the collections of such proceeds by defendant, both as security for advances and as a protection against other creditors of plaintiff in case of failure of the business, and that it was the distinct understanding and agreement that, notwithstanding the letter of the contract, the business was to be conducted exclusively by plaintiff, without interference or assistance from defendant, except the loan of money and the collection of accounts.

The conduct of the parties during the five years that it remained in force corresponds closely with plaintiff's testimony as to the real agreement between them.   Plaintiff hired the premises in which the business was carried on and paid the rent.   He purchased goods upon his own judgment as to character, price, and quality.   They were received by him, were kept at all times in his business premises, and cared for by his employés.   He insured them and paid the premiums. They were sold by his salesmen, and packed and shipped by his employés.   He sent out the bills for them, and kept and paid for bookkeepers and clerks, of his own selection, who kept the accounts of the business in books purchased by him.   The lease and the insurance policies were assigned to defendant, the invoices of goods received were stamped with a form of consignment to him, although the goods themselves remained in plaintiff's possession and control, and the bills sent out for goods sold were made payable to the defendant, and collected by him through the use of his own office facilities; but it is claimed that none of these things were of advantage to plaintiff, or served any other purpose than to assure defendant's lien for advances made.

A leading case in this state upon the question of what agreements for compensation, beyond interest, may lawfully be made by factors, and under what circumstances, is Matthews v. Coe, 70 N. Y. 239, 26 Am. Rep. 583, which has been cited and followed in many cases.   It went twice to the Court of Appeals (see 49 N. Y. 57), and from the facts to be gathered from the two reports it appears to have been the case of a bona fide factor's agreement under which the factor advanced money for the purchase of the goods and actually undertook to receive and care for the corn, which was the subject of the agreement, and to sell it when a favorable opportunity arose.   For this he charged a commission in addition to legal interest on the moneys advanced.   The court sustained the contract in that case, saying:

"Such contracts, proper and usual in form, may be made covers for usury, and, when this fact is established by competent proof, they are within the condemnation of the laws against usury, and void.   The question is upon contracts for the transaction of a commission business in connection with the use of money, whether a fair, reasonable, usual, and customary allowance for the trouble and inconvenience of transacting the business only has been secured, or whether, under the guise of a commission for services, trouble, and expenses, the lender has sought to and has reserved and secured to himself compensation for the use of his money in excess of the rate of interest allowed by law.   The contracts are not necessarily usurious, and the onus is upon the

party seeking to impeach them for usury, to prove the guilty intent, and that the contract is a cover for usury and for the loan of money upon usury. Thomas v. Murray, 32 N. Y. 605; Booth v. Swezey, 8 N. Y. 280; Smith v. Marvin, 27 N. Y. 137."

[**2, 3**] The plaintiff's whole case, upon this branch of it, rests upon his contention that the commission agreed to be paid, in addition to 6 per cent. interest, was so to be paid for the advance or loan of money, and for nothing else; for if defendant was required and undertook to render any other service, or to do any acts from which plaintiff might derive an advantage, and which involved additional trouble and expense, a charge for compensation, in addition to interest, would not render the contract usurious. If there were any such services provided for and actually performed, it does not matter that the defendant did not perform all the services which, under the letter of the contract, might have been required of him, especially when, as appears in this case, the omission to perform such services was at the special instance of plaintiff. Smith v. Marvin, 27 N. Y. 137, 144; Matthews v. Coe, 70 N. Y. 239, 242, 26 Am. St. Rep. 583; Cockle v. Flack, 93 U. S. 344, 346, 33 L. Ed. 949. In the case last cited the contract was that of a factor, who agreed to advance money for the purchase of goods which were to be consigned to him for sale, for which he was to be paid a commission in addition to interest. As matter of fact the goods, or some part of them, were by mutual agreement retained and sold by the borrower, and it was claimed that this circumstance converted the contract into an usurious one, because the factor claimed and was awarded commission on the goods not consigned to or sold by him. After affirming the legality of the usual factor's commission, the Supreme Court of the United States went on to say:

"We see no reason why the parties could not go a step further, and stipulate that if, for any reason operating in the interest of the borrower, he should prefer to become his own broker or commission merchant, or to sell at home, he should pay the commission which the other had a right to contract for and receive."

Looking at the contract and the course of business transacted under it, we can readily discern at least one service which defendant agreed to perform, and did in fact perform, which was beneficial to plaintiff, or, at the least, was calculated to benefit him. There is frequently much more trouble and expense in collecting accounts payable than that which is involved merely in sending out a bill and receiving a check for it. This service was wholly assumed by defendant, who seems to have had an office force well equipped for that purpose. It is true that it was also of advantage to defendant to collect the bills, because he relied upon such collections to repay his advances, but that is unimportant, if the service was advantageous to the plaintiff, as we think it unquestionably was. This one service, standing alone, was sufficient to warrant the charge of a commission. Matter of Mesibovsky, 200 Fed. 562, 119 C. C. A. 42; Houghton v. Burden, 228 U. S. 161, 33 Sup. Ct. 491, 57 L. Ed. 780. No question is involved as to the reasonableness of the commission charged. At all events, it was agreed to by plaintiff and acquiesced in by him for a period of five years, during which time it does not appear that he ever called

upon defendant to do anything more than was actually done.  Our conclusion on this branch of the case, therefore, is that plaintiff has failed in the attempt to show that the contract was a mere cloak for usury.  To this extent the judgment appealed from is erroneous.

[4-8] The second capital question involved in this appeal is as to the right of defendant to charge and retain interest upon his advances compounded monthly.  This does not, as we consider, involve any question of usury, if justified by any contract between the parties.  The written agreement was that "interest shall be charged and credited to the account current  *  *  *  at the rate of six per cent. (6%) per annum."  Unless a different agreement may be inferred from the acts of the parties, no other agreement as to the interest to be charged was ever made between them.  As has been said, defendant's custom was to furnish plaintiff monthly with what are termed accounts current, showing the advances made and collections received during the month.  On this account were charged defendant's commission and interest, and a balance was struck.  This balance, always in favor of defendant, constituted the starting charge for the next monthly account.  In this manner defendant charged interest, not only on his advances for the month, but upon the balance of the account for the preceding month, thus compounding interest monthly upon advances, commissions, and interest.  Thus defendant retained, not 6 per cent. per annum on his advances, but a much larger rate.

The question as to when compound interest may be charged was exhaustively considered in Young v. Hill, 67 N. Y. 162, 23 Am. Rep. 99.  In that case it was said:

"Compound interest can only be recovered upon some new and independent agreement, made upon a good consideration.  *  *  *  The exacting or reserving of compound interest has not met with favor in the courts, but the right to retain it when voluntarily paid is not disputed, and a recovery of it upon express contract, made after the interest has accrued and upon a sufficient consideration, is allowed.  *  *  *  Two propositions are definitely settled by adjudication:  First, that an agreement to pay interest upon interest must, in order to its validity, be made after the interest which is to bear interest has become due;  and, second, that it must be supported by a sufficient consideration."

See, also, Quackenbush v. Leonard, 9 Paige, 334;  Van Benschooten v. Lawson, 6 Johns. Ch. 313, 10 Am. Dec. 333;  Connecticut v. Jackson, 1 Johns. Ch. 13, 7 Am. Dec. 471.

The contract was for 6 per cent. per annum, which at the most would have permitted only annual rests, and it is not contended that there was ever any express agreement that interest should be compounded more frequently.  It is claimed, however, that plaintiff's retention of the monthly accounts current showing the compounding of interest indicated his acquiescence, and was equivalent to an express agreement that the interest should be compounded monthly.  One answer is that no new consideration is shown for any such agreement, and another is that plaintiff did not acquiesce.  On the contrary, the first year of the contract he protested, but his protest was unheeded.  There was nothing more that he could do, except to break the contract, and this, for obvious reasons, he could not do without great financial

risk. An assent to an illegal transaction will not be inferred under such circumstances.

It is also said that the current accounts are to be treated as accounts stated, and that plaintiff, having received and retained them in silence, cannot now be heard to question their accuracy. The theory upon which rests the finality of an account stated is that it represents an agreement reached by the parties. It is not final, however, if either party is so circumstanced that he is not free to assent or dissent, or if either had already expressed his disagreement with the manner in which the account is made up. Edwards v. Hoeffinghoff (C. C.) 38 Fed. 635; Eames Vacuum Brake Co. v. Prosser, 157 N. Y. 300, 51 N. E. 986; Stenton v. Jerome, 54 N. Y. 480. Both of these obstacles to regarding the monthly accounts as final exist in the present case. The plaintiff had objected to and protested against the compounding of interest, and had never withdrawn his objection and protest. He was not bound to renew it every month. Reusens v. Arkenburgh, 135 App. Div. 75, 119 N. Y. Supp. 821. Nor was he in a position to enforce his objection by the only method open to him, at the risk of wrecking his business by engaging in a contest with a creditor who claimed title to all his goods and money. The attempt to justify the retention of the commission and the compounding of the interest, by the allegation that defendant only followed the custom adopted by those engaged in a similar business, cannot succeed, for custom can neither justify illegality nor a departure from the plain terms of a contract. It is not to be overlooked that until the final settlement in August, 1907, plaintiff never paid defendant anything. What defendant did was to collect plaintiff's money and pay himself, making advances therefrom to plaintiff from time to time. Plaintiff cannot, therefore, be charged with the compound interest because he voluntarily paid it.

The final account between the parties in August, 1907, upon which plaintiff paid defendant, under protest, upwards of $20,000, cannot be taken as an account stated which debars plaintiff from now asserting his claim for the overpaid interest. Plaintiff was not free to contest the defendant's claims or to raise any question as to their legality. His payment of the balance shown by that account cannot be considered as wholly voluntary, but was compelled by the circumstances that defendant held title to and asserted a lien upon plaintiff's goods. Harmony v. Bingham, 12 N. Y. 99, 62 Am. Dec. 142; Stenton v. Jerome, 54 N. Y. 480.

As to the charges for legal expenses incurred by defendant, we think that they were properly disallowed, and we are also of opinion that the defendant is legally chargeable with interest upon whatever balance may be found to have been due to plaintiff when the business between them was finally wound up on August 1, 1907.

The judgment appealed from must therefore be modified as indicated in this opinion, the accounting being limited to the excess of interest and the other items improperly charged against plaintiff, and, as so modified, affirmed, without costs to either party in this court. Modified findings and the judgment to be entered thereon may be settled on notice.

Judgment modified, as indicated in opinion, and, as modified, affirmed, without costs. Order to be settled on notice.

INGRAHAM, P. J., and CLARKE and HOTCHKISS, JJ., concur.

DOWLING, J. (dissenting). Having reached the conclusion that the contract between the parties and the defendant's pretended services thereunder were but a cover for the collection of usury, and that the whole transaction amounted to no more than the loan of money at an usurious rate of interest, I dissent from the modification of the judgment appealed from, and am in favor of affirmance.